THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL HUNTER *et al.*, Defendants-Appellants.

First District (3rd Division)    Nos. 62432, 62462 cons.

Opinion filed October 7, 1976.

James J. Doherty, Public Defender, of Chicago (Gary G. Stanton, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Steve Philantino, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendants, Paul Hunter and Wilbert Dubose, were charged with two counts of armed robbery. They were tried without a jury, found guilty on both counts and sentenced to two concurrent terms of four to five years in the penitentiary. Both defendants appeal; Dubose contends that he was not proved guilty beyond a reasonable doubt, and he and Hunter assert that the trial court erred in sentencing them for two offenses which arose from one act.

The two defendants entered a Chicago restaurant at approximately three o'clock in the morning. Hunter came in the back door and Dubose the front. The only persons present were two women, Valerie Sparkman and Elizabeth Parker, who were cleaning the place prior to closing. When Sparkman first noticed Hunter he was kneeling on the floor in front of the cash register with a gun in his hand. The register was on a table behind a

five-foot counter which separated the restaurant's kitchen from the patrons' area. Hunter threatened to kill the women if they did not open the cash register. Parker complied with Hunter's demand. He then stood up and took money, which was in paper bills and rolls of change, plus the restaurant's commercial receipts from the register and placed them in a dark shoulder bag he was carrying.

While Hunter was emptying the cash register, Sparkman saw Dubose standing in the patrons' area. He was facing her, but she could only see his head because her view was blocked by the counter. He said nothing, but kept looking at her while Hunter was going through the register. He stayed in the restaurant about eight minutes and went out the front entrance shortly after Hunter left through the back door.

A passerby testified that he saw Hunter and Dubose run out of an alley adjacent to the restaurant at the same time; both men had weapons in their right side pockets and one of them was carrying a pouch.

Three or four people flagged down a police car and told the officers that an armed robbery had been committed and that two suspects were fleeing in a northerly direction. After driving a short distance the officers saw two men walking swiftly. As the car approached them at high speed with its lights off, both men began to run. Dubose ran 10 to 15 feet before he stopped; Hunter continued to run and one of the policemen pursued and captured him when he fell while trying to jump over a fence.

During a search of Dubose's person the arresting officer patted his back pocket and felt a weapon which was completely concealed. After this discovery was made Dubose stated: "Yes, I have a gun." No money or receipts were found in his possession. Hunter had a .45-caliber automatic weapon in his right hand and $150 on his person. The money was in paper bills and coins which were rolled in paper wrappings. The officer who arrested him also recovered a shoulder bag which contained commercial receipts from the restaurant.

Dubose testified that Hunter was his brother-in-law and that he was searching for him in the early morning hours because he thought he might get into trouble. He went to the restaurant to look for him, and once inside and not finding him there, he decided to order some food. He left after two or three minutes because no waitress came to take his order. He left by the front door and unexpectedly met Hunter on the street adjacent to the restaurant. When they noticed a car coming up behind them with its lights out, they started to run. Dubose said that he stopped running as soon as he realized it was a police car.

Dubose argues that the State failed to prove that he aided and abetted Hunter in the armed robbery; that the evidence only showed his presence at the scene of the crime, not his participation in it. He bases his argument on the following: Hunter was the only person behind the counter who had

no authority to be there; only Hunter ordered the employees to open the register; Hunter, not he, took the cash and the receipts from the register; Hunter had started emptying the register before he was noticed in the patrons' area, and there was no evidence that he was watching Hunter or acting as a lookout, or that he could even see Hunter from his position in front of the counter; there was no testimony that he spoke or displayed a gun during the robbery; he left by the front door while Hunter went out the back; he did not run out of the door and ran only 10 to 15 feet from the police; he told the arresting officer that he had a gun in his pocket; and that no robbery proceeds where found on him.

Mere presence or negative acquiescence at the scene of a crime does not make a person a principal in the crime. However, one may aid and abet a criminal offense without actively participating in the overt act. (*People v. Nugara* (1968), 39 Ill. 2d 482, 236 N.E.2d 693, *cert. denied*, 393 U.S. 925, 21 L. Ed. 2d 261, 89 S. Ct. 257 (1968).) Circumstances may show a common design to commit an offense, and if this is so, one may be guilty of the offense without actively assisting in its commission. A person who is present when a crime takes place and does not oppose it may be guilty even though he is not an active participant. His presence and lack of opposition may be considered together with other facts and circumstances in determining whether he was a participant. *People v. Harris* (1969), 105 Ill. App. 2d 305, 245 N.E.2d 80, *aff'd*, 55 Ill. 2d 15 (1973).

■■ In the trial court's opinion and in ours, Dubose aided and abetted Hunter in the robbery. The evidence established his knowledge of and participation in the crime. He was in the restaurant an estimated eight minutes; his eyes were fixed on Valerie Sparkman during this time, yet he did not ask for service; contrary to his assertion, she testified that from where he was standing he could see Hunter; he was armed with a gun; he left when Hunter left; he ran when Hunter ran. His silence during the robbery does not negate a common design—there was no need for him to speak—Sparkman and Parker offered no resistance and no customer came in. Proof of a common purpose need not be supported by words showing agreement, but can be drawn from the circumstances surrounding the commission of an act by others. (See *People v. Richardson* (1965), 32 Ill. 2d 472, 207 N.E.2d 478, *cert. denied*, 384 U.S. 1021, 16 L. Ed. 2d 1023, 86 S. Ct. 1935 (1966).) His statement to the police that he had a gun was made after an officer discovered the weapon in his pocket. His not having any of the proceeds of the robbery when he was arrested is not significant; he was arrested soon after the crime was committed, running from the scene with the man who had taken the proceeds and who still had them in his possession. All these facts

demonstrated a joint plan to commit the robbery. They cannot be explained away as just a series of coincidences.

Dubose also argues that the testimony of the witness who said he saw him and Hunter come out of the alley together was not credible because it contained contradictions. There were no major inconsistencies in his testimony, and the minor ones only affected the weight to be given his testimony. (*People v. DeGrea* (1969), 107 Ill. App. 2d 301, 247 N.E.2d 38.) Dubose also contends that the testimony of this witness and that of the arresting officer cannot lend support to his conviction because their testimony dealt with his actions after the robbery was committed, and a person cannot be held accountable as a principal for actions occurring after an offense has been carried out. Dubose was not convicted upon this testimony alone. It merely provided additional circumstantial evidence for the trier of fact to consider.

■■ In a nonjury trial, it is in the province of the judge to determine the credibility of the witnesses and the weight to be accorded their testimony. His judgment will be disturbed only where it is based on evidence so unsatisfactory that a reasonable doubt is raised as to the defendant's guilt. (*People v. Steptoe* (1976), 35 Ill. App. 3d 1075, 343 N.E.2d 1.) The evidence of Dubose's guilt was not unsatisfactory. He was proved guilty beyond a reasonable doubt.

In one count of the indictment the defendants were charged with robbing Valerie Sparkman, in the other with robbing Elizabeth Parker. The State contends that both defendants were properly found guilty and sentenced on each of the two counts because each victim was robbed of property under her control. However, the property stolen was from the restaurant's cash register, not from the person of either woman.

■ A court may not enter two judgments or impose two sentences for offenses arising from a single act. (*People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1; *People v. Stewart* (1970), 45 Ill. 2d 310, 259 N.E.2d 24.) In *People v. Scott* (1974), 23 Ill. App. 3d 956, 320 N.E.2d 360, four armed men entered a tavern and announced a robbery. One of them removed the contents of the cash register. The defendants were charged with two counts of armed robbery—one of the bartender and one of the owner, both of whom were present. The defendants were convicted and sentenced on each count. On review this court held that the trial court erred, that it could not enter more than one judgment or impose more than one sentence, even though there were two victims present and both were threatened with force and both had custody of the property that was unlawfully taken.

The present case and *Scott* are identical. The defendants' judgment of conviction and sentence on the first count of armed robbery are reversed;

the defendants' judgment of conviction and sentence on the second count of armed robbery are affirmed.

Affirmed as modified.

MEJDA, P. J., and McNAMARA, J., concur.