No. 13754

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

ALLYN WESLEY BAIN,

        Defendant and Appellant.

---

Appeal from:  District Court of the Fourth Judicial District,
Honorable Edward Dussault, Judge presiding.

Counsel of Record:

    For Appellant:

        Smith, Connor, VanValkenburg & Larrivee, Missoula,
        Montana
        Fred VanValkenburg argued, Misoula, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Edward L. Deschamps, III, County Attorney, Missoula,
        Montana
        Ed McLean argued, Deputy County Attorney, Missoula,
        Montana
        Keith Maristuen, Legal Intern, County Attorney's
        Office, Missoula, Montana

---

Submitted:  December 9, 1977

Decided: MAR - 1 1978

Filed: MAR - 1 1978

Thomas J. Kearney
Clerk

Hon. R. D. McPhillips, District Judge, delivered the Opinion of the Court:

This is an appeal by defendant Allyn Wesley Bain from a conviction by a jury in the District Court, Missoula County.

In the early evening of May 10, 1976, defendant walked from downtown Missoula, Montana to the 2000 block of South Avenue to visit family friends. When he left his friends' house about 11:00 p.m. it was windy and raining lightly.

Defendant did not live in Missoula, but was staying in Missoula with a cousin, Karen Skroch, who lived in the Hollywood Trailer Court, 1700 Cooley Street. This was across town from where defendant's friends lived. As defendant walked back to the trailer court, the weather became worse. Defendant started looking in parked cars as he was passing to see if one was unlocked and had keys in it. He noticed keys in a car parked on the 1400 block of South 5th West. He took the car, which belonged to Ray Otto, and drove to his cousin's trailer. Defendant parked the car outside the trailer, went inside, and soon went to bed.

The next morning defendant awoke around 10:00 or 11:00 a.m. and upon remembering the stolen car was outside, he decided to drive the car to downtown Missoula and leave it parked somewhere.

On his way downtown, defendant was spotted by Lieutenant Richard Thurman, who recognized the car as a stolen car from a list of stolen cars he carried in his vehicle. Defendant saw the police car and attempted to escape. Lieutenant Thurman initially lost sight of the car, but radioed for help in searching the area for it. He soon spotted the car again and proceeded to pursue it

with lights flashing and siren blaring. Defendant did not stop, but attempted to escape by traveling through the Missoula streets at speeds between 25 to 50 miles per hour. The police chased defendant for approximately 15 blocks before defendant was stopped by a police car ramming into the car defendant was driving. There were no injuries and defendant, offering no resistance, was taken into custody.

The only damage to the car resulted from the police ramming it, in their attempt to stop it. Defendant did not take anything from the car, did not change the vehicle identification number, did not repaint it, nor change the license plates.

Defendant was charged with theft, a felony, in violation of section 94-6-302, R.C.M. 1947. Trial commenced October 4, 1976 and concluded October 5, 1976. During the course of trial, defendant moved for a mistrial on the grounds of alleged prosecution misconduct. The motion was denied. The jury convicted defendant of the offense of theft and he was sentenced to 10 years in the Montana state prison.

Two issues are presented on appeal:

1) Was the conduct of the prosecuting attorney during trial prejudicial to defendant thereby denying him a fair trial?

2) Was there substantial evidence to support defendant's conviction of the offense of theft?

On direct examination defendant testified he did not stop when he first saw the police because he knew he was driving a car that did not belong to him, and because he did not have a valid driver's license.

Before the prosecution cross-examined defendant, counsel for both parties had a hearing before the trial judge and out of the presence of the jury. The prosecution believed defendant

"committed a fraud" upon the jury by testifying that he did not stop when he first saw the police only because he was driving a car that belonged to someone else and because he did not have a valid driver's license. It therefore wanted to go into defendant's parole status, contending the defendant's primary motive was that if caught driving a stolen vehicle, he would be returned to the Montana state prison. The prosecution cited no authority for its contention and the court refused to allow the prosecution to go into defendant's background.

On cross-examination immediately following the hearing in the trial judge's chamber, this colloquy occurred:

"BY MR. McLEAN: [Deputy County Attorney]

"Q. Mr. Bain, have you ever been convicted of a felony? A. Yes, I have.

"Q. Did that have anything to do with why you avoided Lieutenant Thurman?

"MR. VanVALKENBURG: [defendant's attorney]. Objection, Your Honor. I'm asking the Court to declare a mistrial at this point. He's trying to do something here that he can't do.

"THE COURT: Sustained.

"MR. VanVALKENBURG: Will the Court grant a mistrial?

"THE COURT: No, not mistrial; I'm just saying --

"MR. VanVALKENBURG: Then I'd ask the Court to instruct Mr. McLean to stick with what his questions are supposed to be.

"THE COURT: Very well, you're so instructed, Mr. McLean.

"Q. (By Mr. McLean) Why did you avoid Lieutenant Thurman? A. I told you.

"Q. Tell me again, please. A. Okay, because I didn't have a driver's license. I was driving a stolen vehicle.

"* * *

"Q. Mr. Bain, did you have any other motive other than being in a stolen vehicle and being without a driver's license for avoiding Lieutenant Thurman when he put on his siren? A. No.

- 4 -

"Q. No. Now, that is your direct and unequivocal answer to that question? A. Didn't have any other motive except I didn't have a driver's license and I was driving a stolen vehicle.

"Q. In regard to that, do you need to acquire permission from anyone to come into Missoula?

"MR. VanVALKENBURG: Your Honor, I'm going to object. I think you already know the grounds.

"THE COURT: Sustained.

"MR. VanVALKENBURG: I'm going to ask that Mr. McLean be admonished to refrain from questioning in this area, and that he receive some instruction from the Court.

"THE COURT: The objection is well taken, and the jury will disregard the question just asked by Mr. McLean.

" * * *

"Q. [By Mr. McLean] Can I ask you: If you're such a law abiding citizen, why you -- God damn, didn't you stop when you saw the sirens or lights behind you?

"MR. VanVALKENBURG: All right, asked and answered.

"THE COURT: Overruled.

"MR. McLEAN: Pardon, Judge.

"THE COURT: Overruled.

"A. I told you that because I was in a stolen vehicle and I didn't have no driver's license."

In rebuttal, the prosecution wanted to put on the stand a witness from the Adult Probation Office to establish the fact defendant was on parole and had no authority to be in Missoula. The Court would not allow the witness to take the stand.

Under the United States Constitution and the 1972 Montana Constitution, a criminal defendant has a right to a fair trial. United States Constitution, Amendment 5; 1972 Montana Constitution, Article II, Section 24.

- 5 -

Misconduct by the prosecutor may form the basis of a new trial where the prosecutor's actions have deprived the defendant of a fair and impartial trial. State v. Toner, (1953), 127 Mont. 283, 264 P.2d 971.

This Court has recognized that evidence of the same kind as that previously ruled incompetent should not be repeatedly offered within the hearing of the jury, and if so offered, even though rejected, may be grounds for reversal. State v. Searle, (1952), 125 Mont. 467, 239 P.2d 995. In State v. Toner, supra, this Court held that a defendant has not had a fair and impartial trial where the prosecutor continually asks the defendant or his witnesses prejudicial and incompetent questions.

The state apparently felt the questions asked were valid questions and that the Court was in error for not allowing the state to question defendant about his parole status. The state felt this evidence was relevant to defendant's intent to deprive the owner of his car.

Evidence was already introduced to show that when defendant saw the police, he did not return or park the car but fled. Defendant admitted he knew he would be in trouble for driving a stolen vehicle and not having a valid driver's license. Any possible evidence regarding defendant's parole status could not add to defendant's already demonstrated intent to evade the police.

Not all evidence is admissible merely because it may be relevant. The court must weigh the probative value of the evidence against its potentially prejudicial effect on the defendant's right to a fair trial. The trial judge should and does have latitude of discretion on the admissiblity of such

- 6 -

evidence. State v. Rollins, (1967), 149 Mont. 481, 428 P.2d 462. See: Montana's new Rules of Evidence, Rule 403, effective July 1, 1977. Here, there was already evidence in the record to show defendant's admitted and very apparent intent to avoid capture. The additional evidence regarding defendant's parole or probation status would only prejudice the defendant. The court did not abuse its discretion in ruling the evidence was inadmissible.

It is not the duty of the prosecuting attorney to make independent determinations concerning the admissibility of evidence once the court rules such evidence is inadmissible. Willful attempts by counsel to place excluded evidence before the jury may result not only in a mistrial, but reversal.

As a general rule, evidence of a separate or collateral crime is not admissible. But an exception may occur when one criminal act is so closely related to the one upon which the charge is based as to form part of the "res gestae". State v. Hensley, (1976), _____Mont._____, 554 P.2d 745, 33 St.Rep. 874. However, there is no application of that rule involved in the factual situation here.

We next consider whether the repeated attempts to place the excluded evidence before the jury was prejudicial to defendant. Under the existing rules of evidence at the time of the trial, defendant was properly asked the question if he had ever been convicted of a felony. The defendant responded, yes. This evidence was admissible for purposes of impeachment, section 93-1901-11, R.C.M. 1947. Despite the court's ruling, the prosecution then attempted to ask defendant several questions from which it could be inferred that defendant was on

probation or parole. In determining whether such questions are so prejudicial to the defendant as to require reversal, this Court must look (1) to the reasonable inference to be drawn from the questions, State v. Toner, supra, and (2) whether such repeated attempts to offer excluded evidence might have contributed to the conviction. State v. Langan, (1968), 151 Mont. 558, 445 P.2d 565.

The only reasonable inference that could be taken was that defendant not only was a convicted felon, but was on parole or probation, thereby putting into issue further evidence of bad character. The issue of defendant's character was never opened by the defense. Given the fact the jury deliberated some 6 hours before rendering a verdict of "guilty", and the fact that the unauthorized use of a motor vehicle is a lesser included offense within the crime of theft, State v. Shults, 169 Mont. 33, 544 P.2d 817, certainly rendered a very real possibility of prejudice to defendant in the factual situation of this case. We hold the repeated attempts to put the excluded evidence before the jury to be reversible error.

We have reversed the case on the first issue, therefore it is not necessary to discuss the second issue.

The judgment of the trial court is reversed and a new trial is ordered.

Hon. R.D. McPhillips, District
Judge, sitting for Mr. Justice
Frank I. Haswell.

- 8 -

We Concur:

_John Conway Harrison_
Acting Chief Justice

_Gene B Daly_

_Daniel J Shea_
Justices.