THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT CRUTCHER, Defendant-Appellant.

Fifth District   No. 78-168

Opinion filed May 21, 1979.

Richard J. Wilson and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Marc D. Towler and Jane F. Bularzik, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Following a jury trial in St. Clair County, defendant, Robert Crutcher, was convicted of armed robbery and sentenced to a term of 6 to 18 years imprisonment. From his conviction and sentence, defendant appeals.

The facts established that Jerry Stultz was working at a filling station on Camp Jackson Road in the early morning hours of October 30, 1977. At approximately 2 a.m. that morning, he observed a green Ford with its lights out on a road near the service station. Five minutes later, the car with three occupants entered the station and stopped at a gas pump. The passenger in the front seat, later identified as David Martin, directed Stultz to fill up the car. As Stultz pumped the gas he noticed defendant, who was seated in the back seat, lock the back doors and roll up the back windows even though the temperature that evening was fairly comfortable. When Stultz finished, Martin stepped out of the car, pointed a sawed-off shotgun in the attendant's direction, and demanded his money in a loud voice. The passenger then took Stultz's .22-caliber pistol, which Stultz had pulled out to protect himself but had accidently dropped, $75 in cash and a money changer. Stultz testified that during the entire incident, defendant never said a word. After the assailants fled from the scene, Stultz called the police and gave them the license number and a description of the car.

At 4:30 a.m., the police stopped the green Ford which was then being driven by Martin. The only passenger in the vehicle was defendant who was sitting in the front seat. The officers found the coin changer under the driver's seat, the sawed-off shotgun in the glove compartment and the pistol under the passenger's seat. They did not find any weapons or money on defendant.

Testifying in his own behalf, defendant stated that David Martin, a casual friend, came to his house at 7:40 p.m. on the evening of October 29, 1977. They then left the house and took a bus to a poolroom where they had some drinks and played pool. After 40 minutes, they left the poolroom and went to the Alabam Club where defendant was introduced to a man named McGee, a friend of Martin's. An hour and a half later, the three men went to get some Chinese food in a green Ford driven by McGee. Thereafter, the men drove around with no particular destination in mind and stopped only once at a liquor store prior to the time they approached the gas station on Camp Jackson Road. Defendant testified that when they drove slowly near the station without the headlights on he

asked McGee why the lights had been turned off. McGee responded by turning the lights back on. Defendant further testified that he did not know anything about a holdup nor did he know that there was a gun in the car until Martin displayed the sawed-off shotgun. After the robbery, defendant asked Martin why he had held up the attendant and asked to be let out of the car at the Ebony Club. McGee then drove to a housing project in East St. Louis where he departed. Martin took the car keys and drove toward the club. Shortly thereafter, Martin and defendant were stopped and arrested.

On cross-examination, defendant testified that he did not remember locking the car doors or rolling up the windows. Furthermore, he did not recall driving around without car lights until his memory was refreshed by the testimony of the complaining witness.

■■ ■ Defendant first argues that he was not proved guilty of armed robbery beyond a reasonable doubt. Under subsection (c) of section 5—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c)) an individual is legally accountable for the conduct of another when:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

While mere presence at the scene of the armed robbery or negative acquiescence in the actions of another is insufficient to hold one accountable as a principal to a crime, one may nevertheless be held to aid and abet without actively participating in the overt act. (*People v. Nugara*, 39 Ill. 2d 482, 236 N.E.2d 693 (1968), *cert. denied*, 393 U.S. 925, 21 L. Ed. 2d 261, 89 S. Ct. 257 (1968); *People v. Cole*, 50 Ill. App. 3d 133, 365 N.E.2d 133 (5th Dist. 1977), *cert. denied*, 435 U.S. 944, 55 L. Ed. 2d 541, 98 S. Ct. 1526 (1978).) If the evidence shows that the accused was present at the scene of the crime without disapproving or opposing it, the trier of fact may consider this conduct along with other circumstances in determining whether such person assented to the commission of the criminal activity, lent to its his countenance and approval and thereby aided and abetted the crime. (*People v. Nugara.*) Furthermore, where the evidence discloses the accused's close affiliation with the perpetrators of the offense and other circumstances showing a common criminal design of the group, the accused may be convicted of such offense without actively assisting in its commission. *People v. Cole*; *People v. Hunter*, 42 Ill. App. 3d 947, 356 N.E.2d 822 (1st Dist. 1976).

■■ In the present case, the evidence was sufficient to sustain the verdict finding defendant guilty of armed robbery beyond a reasonable doubt. The evidence at trial established that defendant was present at the scene of the armed robbery and witnessed, if not actually participated in, the

crime's commission. While defendant denied having knowledge of Martin's and McGee's intentions, we believe the circumstances surrounding the events of the evening clearly indicated that defendant was well aware of the planned offense and participated in and assented to the criminal activity. Defendant testified that he was with Martin continuously for 6 hours, and with McGee a couple of hours, prior to the incident; yet he denied hearing any discussion concerning an armed robbery which clearly was coordinated or planned in advance. Defendant continued to profess ignorance of the crime prior to its occurrence but was well aware that McGee slowly circled a filling station without the headlights on at approximately 2 a.m. The implausibility of defendant's story takes on additional significance when defendant rolled up the windows and locked the car doors immediately prior to the holdup and did not express any surprise, as would an innocent bystander, when Martin pulled out a sawed-off shotgun. Furthermore, defendant made no attempt to disapprove of or oppose the robbery and, in fact, continued to stay with Martin for two hours following the act until they were both arrested. While we agree with defendant that accountability requires that the assistance of a person occur prior to or during the criminal act, such assistance can nevertheless be inferred from activities occurring after the offense. *People v. Clifford*, 38 Ill. App. 3d 915, 349 N.E.2d 922 (1st Dist. 1976).

We believe the trier of fact had ample reason to reject defendant's account of the incident as his story was highly improbable in light of the surrounding circumstances. In fact, defendant's improbable story is only another factor which may be considered in determining his participation in the events in question. Accordingly, the evidence established that defendant aided and abetted Martin in the armed robbery beyond a reasonable doubt.

The authority cited by defendant in support of his position that he was not accountable for the offense is readily distinguishable from the present case. In both *People v. Wright*, 43 Ill. App. 3d 458, 357 N.E.2d 224 (4th Dist. 1976), and *People v. Owens*, 32 Ill. App. 3d 893, 337 N.E.2d 60 (4th Dist. 1975), cases involving the theft and armed robbery of a filling station, the appellate courts reversed the respective defendants' convictions as there was little or no evidence that they participated in or were involved with the criminal acts other than their mere presence at the scene of the crime. There was not a sufficient showing of other circumstances indicating common design or involvement in the commission of the offense as in the present case where defendant spent numerous hours with McGee and Martin both prior and subsequent to the offense, suspiciously drove around the gas station, and rolled up the windows and locked the doors in anticipation of the incident. In fact, in

*Wright* there was no showing that the defendant even had knowledge that a crime was being committed.

Defendant next contends that he was denied a fair trial when the State conducted an improper impeachment of defendant during cross-examination. The facts show that the state's attorney, on cross-examination, asked defendant if he had previously been convicted of a felony. Defendant responded that he had been convicted of manslaughter in 1964. Thereafter, the State concluded its case without offering an authenticated copy of the record of conviction.

At the instruction conference, defense counsel stated that he had a motion to make concerning the admission of defendant's prior offense. A discussion followed:

"THE COURT: Well, if you would have brought to my attention that it was over ten years old, I wouldn't have allowed the things, because I looked to you when they started talking to see if you were on that. I didn't know what they were going to say. * * * This case [the manslaughter conviction] being one that actually not directly attacks his integrity, truthfulness, so forth * * *. He might be inclined to work somebody over, but that doesn't mean he would lie. It would be within a short period of time regardless of what kind of crime, I would have let it in, but back that far, regardless of whether * * * he was on parole or not, I would not have allowed it. What do you want to do to correct it?

MR. GROTTS[defense counsel]: I would like to ask the Court to instruct the jury to disregard it."

Thereafter, the court instructed the jury to disregard the manslaughter conviction.

The State contends that defendant was not denied a fair trial where he failed to object to the admission of the prior offense and where the court subsequently directed the jury to disregard this testimony. Defendant, however, argues that the State's failure to offer proper proof of defendant's prior conviction constituted error; that the admission of defendant's prior conviction was highly prejudicial and had no probative value (see *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971)); that the instruction directing the jury to disregard this conviction was insufficient to alleviate the prejudicial effect of this evidence; and that even if defendant waived the issue of the State's improper cross-examination, he was denied the effective assistance of counsel because of defense counsel's failure to move to exclude this improper evidence or otherwise make a timely objection.

■ We first note that defendant's failure to object to the State's improper elicitation of his prior criminal record for impeachment, by questioning him on cross-examination rather than introducing an authenticated copy

of a record of conviction, constituted a waiver of this issue on appeal. *People v. Cunitz*, 45 Ill. App. 3d 165, 359 N.E.2d 1070 (5th Dist. 1977).

■■ A more fundamental and difficult question, however, is whether the court's remedial jury instruction cured the error associated with the admission of a criminal conviction more than 10 years old and not involving the dishonesty of the accused. It is clear that had defense counsel moved to exclude or strike the evidence of the prior conviction the court would have granted the motion pursuant to the criteria set forth in *People v. Montgomery*. While we agree with defendant that it was improper for the state's attorney to elicit the testimony of defendant's prior offense, we believe that any prejudice arising from this testimony was cured where, after defense counsel neglected to make a proper motion or objection, the court subsequently instructed the jury at defendant's request to disregard the testimony, and where no other references to any past criminal activity were made at trial or during closing argument. (See *People v. Dukett*, 56 Ill. 2d 432, 308 N.E.2d 590 (1974), *cert. denied*, 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226 (1974); *People v. Wilson*, 51 Ill. 2d 302, 281 N.E.2d 626 (1972); *People v. Fontaine*, 28 Ill. App. 3d 450, 328 N.E.2d 685 (5th Dist. 1975).) We are cognizant of the potential danger of the jury convicting an individual based solely on prior acts or perceived propensity to commit crime. (*People v. Jacobs*, 51 Ill. App. 3d 455, 366 N.E.2d 1064 (4th Dist. 1977).) But it is the jury's duty and function to follow all of the instructions as given by the court. In the present case, we find no indication that the jury was remiss in its duties. Furthermore, the trial court took all reasonable and necessary precautions to insure that defendant received a fair trial.

■■ In addition, we do not believe defense counsel's failure to move to exclude evidence of the prior conviction or make a timely objection to the State's improper cross-examination warranted a reversal for incompetent representation. A reviewing court will reverse a judgment of conviction for incompetency of counsel only if the defendant demonstrates actual incompetence and substantial prejudice resulting therefrom, without which the outcome would probably have been different. (*People v. Witherspoon*, 55 Ill. 2d 18, 302 N.E.2d 3 (1973); *People v. Dudley*, 46 Ill. 2d 305, 263 N.E.2d 1 (1970), *cert. denied*, 402 U.S. 910, 28 L. Ed. 2d 651, 91 S. Ct. 1386 (1971).) While in the instant case, defendant may have demonstrated the presence of the first component of this test, *i.e.*, the incompetence of counsel for failure to take necessary precautions against the admission of incompetent evidence, he did not show that it resulted in substantial prejudice when the jury was properly instructed to disregard the prior conviction; nor could he show that the outcome would probably have been different as counsel otherwise conducted a proper and vigorous defense.

■■ Defendant also contends that he was denied a fair trial by the court's failure to submit his instruction that mere presence at the scene of the crime does not render one accountable for its commission. This same contention was made by a defendant in *People v. Walker*, 44 Ill. App. 3d 494, 358 N.E.2d 672 (3d Dist. 1976), without success. A defendant is entitled to have the jury instructed on the law applicable to the facts underlying his defense. Nevertheless, the refusal of a tendered instruction incorporating the elements of the defense is not error if its essence is covered by other given instructions. (*People v. Walker*) We agree with *Walker* that the giving of IPI Criminal No. 2.03 ("Presumption of Innocence—Reasonable Doubt—Burden of Proof Generally") and IPI Criminal No. 5.03 ("Responsibility for Act of Another—Accessoryship") as was done in this case adequately encompassed the theory of the defense and therefore the court did not err in refusing defendant's instruction.

Defendant also argues that the trial court abused its discretion in sentencing defendant to a term of 6 to 18 years imprisonment where the sentence was based on the court's mistaken belief that defendant could have received an extended term under the recently amended sentencing act and where the sentence was excessive and disparate in comparison to the 4- to 8-year term received by David Martin, the co-defendant.

The facts established that defendant was convicted of armed robbery, a Class I felony under the old law applicable at the time of the offense and a Class X felony under the new law applicable at the time of sentencing. The trial court explained to defendant that a Class I felony required a minimum sentence of 4 years and allowed for an unlimited maximum. It added that a Class X felony, however, presently provided for a determinate sentence of not less than 6 years nor more than 30. In accordance with subsection (b) of section 8—2—4 (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b)) defendant informed the court that he wished to be sentenced under the old law. In imposing a sentence of 6 to 18 years, the court stated:

> "The Court finds that the defendant does have a history of prior criminal activity, and that the defendant is actually a repeat offender under the circumstances for which should be considered. If it was under the new law an extended term could be imposed against him, and the Court finds that having regard to the nature of the crime committed and in the circumstances of the offense including the possession of a sawed-off shotgun by one of the participants, the history and character of the defendant, that * * * proceeding under the old law * * * defendant will be remanded into the custody of the Department of Criminal Corrections * * *."

It is agreed by all parties that the court erred in assuming that defendant could have received an extended term of 30 to 60 years under the new act as defendant had not been convicted previously of the same or greater class felony within 10 years. (See Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2 and Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(1).) Defendant goes on to argue that this erroneous belief was a "major factor" in the sentence imposed and that consequently this sentence should be vacated. We disagree. The court specifically stated that defendant was being sentenced under the old law and, in fact, imposed a prison term well within the permissible range of a Class I felony. Furthermore, under both the old and the new sentencing acts, it is proper for a court to consider the previous criminal behavior of a defendant in determining the period of incarceration. The court could have imposed a sentence under the old law as severe as the newly authorized extended term but chose to impose more lenient restrictions. This last factor, we believe, clearly indicates that the trial court was not affected by its erroneous belief. Accordingly, we find that defendant was not prejudiced by this misstatement of the law.

■■■ We also believe that the 6- to 18-year sentence for armed robbery was not grossly disparate when compared to the 4- to 8-year sentence received by Martin. The respective briefs of the parties reveal that it was defendant and not Martin who had a prior criminal record. Furthermore, although defendant argues that Martin was more culpable because he held the shotgun, defendant nevertheless shares equal guilt with the principal perpetrator of the criminal act on the theory of accountability. The imposition of a greater sentence given defendant is not discriminatory where he is equally accountable for the commission of the offense and where there is a basis for different sentences such as the presence or absence of prior convictions. See *People v. Prater*, 12 Ill. App. 3d 452, 299 N.E.2d 26 (4th Dist. 1973).

Lastly, defendant argues that the trial court abused its discretion in sentencing defendant by failing to admonish him of the good-time provisions under the new sentencing act, and by failing to set the specific sentences he would receive under the new and old acts, prior to his election under subsection (b) of section 8—2—4 of the Unified Code of Corrections. He argues that without this information the election between these two acts cannot be knowingly and intelligently made.

■■ Subsection (b) of section 8—2—4 offers a defendant who has not been sentenced prior to February 1, 1978, the right to elect to be sentenced under the law as it existed at the time of the offense or under the law in effect on and after February 1, 1978, the effective date of the new sentencing provisions. As recently interpreted by two Fourth District decisions (*People v. Dozier*, 67 Ill. App. 3d 611, 385 N.E.2d 155 (4th Dist.

1979), and *People v. Warfel,* 67 Ill. App. 3d 620, 385 N.E.2d 175 (4th Dist. 1979)), this statute merely provides the right of election under the new and old laws and not the right to select a specific sentence nor the right to be advised of all the differences between the alternative sentencing acts. We agree with this interpretation, and hold that so long as defendant has been advised by the court of his right to choose between the two sentencing laws there can be no violation of this statute.

■■ In the present case, the court not only informed defendant of his right of election but went further and explained the range of possible penalties and the period of parole under each act. Furthermore, the record suggests that defendant had previously conferred with his attorney about these provisions and had already decided to proceed under the old law. Accordingly, we hold that the court was not required to advise defendant of the good-time provisions of the new law nor to set specific sentences under each act prior to defendant's election.

For the reasons stated, the judgment of conviction of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES and KASSERMAN, JJ., concur.