No. 80-101

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

SHIRLEY BUSBY HART a/k/a
SHIRLEY ANNE CHITTENDEN,

Defendant and Appellant.

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Custer.
Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellant:

Morrison Law Offices, Missoula, Montana
William Rossbach argued, Missoula, Montana

For Respondent:

Hon. Mike Greely,Attorney General, Helena, Montana
Keith D. Haker, County Attorney, Miles City, Montana
J. Dennis Corbin argued, Deputy County Attorney, Miles
City, Montana

Submitted: November 17, 1980

Decided: JAN 30 1981

Filed: JAN 30 1981

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant appeals a Custer County District Court conviction, by a jury, of theft by accountability, for which she received a five-year sentence and was ordered to make partial restitution.

Three women entered Mann Credit Jewelers in Miles City, Montana, on the afternoon of May 24, 1979. The only employee in the store at the time was a clerk, June Carranza. Carranza testified that the three women came into the store at about the same time but then separated. Two of the women, who associated openly and were clearly together, asked the clerk to show them some rings in a display cabinet. The third woman, identified by Carranza as defendant Shirley Hart, browsed throughout the store. She asked to look at some wineglasses, which Carranza handed to her. (Fingerprints on the wineglasses were later identified in court as those of Shirley Chittenden, also known as Shirley Hart.) From the wineglasses, defendant went to the cuckoo clocks and asked the clerk a series of questions about them, discovering that the key and a box for the clock she was interested in were downstairs. Hart told the clerk that she would need the box because she wanted to mail it.

Carranza testified that at that point defendant engaged in a short, inaudible conversation with one of the two women, although from the time the three women entered the store, Hart had shown no sign of association with the other two women. After this brief conversation, no further contact was made between Hart and the other women. As Carranza and defendant discussed the clock, the other women left the store and looked through the store window at the items displayed.

Carranza then went down into the basement to seach for the key to the clock and a box in which to mail it. Once downstairs, Carranza heard the sounds of running feet from the store above and the sound of what seemed to be the bumping of glass. She abandoned her search for the key and box and ran back upstairs to find defendant waiting at the top of the stairs. Testimony given by the owner of the store indicated that the area in which Hart was standing was the only area in the entire store where the stairs to the basement could be watched. Hart was on the main floor of the store during the disturbance which brought June Carranza rushing back upstairs, but made no mention to her of any irregularities.

Carranza informed defendant that she could not find the box for the clock but that her boss would be back at 3:30 p.m. and he could certainly help her. Hart told the clerk that she had some shopping to do at Penney's and that she would return. When defendant left the store it was minutes before 3:20. The theft was reported at 3:25. Carranza had informed Hart that her employer would be back within ten minutes, yet defendant chose to leave and not return. The clerk further testified that defendant hurried away after leaving the store.

Carranza then went to clean the display cases and discovered that two display trays of rings were missing from the front window where the two women had just been examining the rings. When police arrived, she gave a description of the three women and described what had transpired. Latent fingerprints were taken from the display case and from the wineglasses. The prints on the display case were those of Donna Standley (a/k/a Donna Harris) and Mary Gunsch; those

on the wineglasses were the fingerprints of Shirley Chittenden (a/k/a Shirley Hart), the defendant.

Two of the State's witnesses testified to defendant's either prior or subsequent association with the other two women seen in Mann Credit Jewelers on May 24, 1979. The exact date of the meeting between these three women was not specifically established by any witness, but the State's witnesses placed all three in the home of Dixie Strid on or near the date of the theft.

Shirley Hart presents four issues for our review:

1. Did she receive a fair trial?

2. Did the prosecution adduce sufficient evidence to prove the elements of the charge, thereby justifying the District Court's decision to deny her motion for a directed verdict and the submission of the case to the jury?

3. Were her constitutional rights violated by her absence during the peremptory challenge stage of jury selection?

4. Was the jury properly instructed?


FAIR TRIAL

Hart asserts that she did not receive a fair trial and that her due process rights were violated by the conduct of the prosecutor and the errors of the trial court.

Defendant first argues that the prosecution deliberately introduced the testimony of Maryona Johnson, knowing that the testimony was likely to be perjured. To show the association of defendant and the two other women, the State called Johnson to testify that in late May or June she saw Shirley Hart at Dixie Strid's house with two women whom she did not know and to whom she was not introduced. Johnson was hostile

and uncooperative throughout her testimony. She was evasive as to the date of the encounter at Strid's house.

Hart contends that Johnson's testimony was more prejudicial than probative and served to deny her right to a fair trial. According to Hart, the manner in which Johnson's testimony was delivered was so confusing and evasive that it gave the appearance that she was attempting to protect someone. Defendant submits that the prosecutor realized the prejudicial impact of the testimony, insofar as it implied that Johnson was trying to protect defendant, and willfully continued his examination to strengthen that impression.

This Court recognizes that due process requires that trials be conducted with "dignity, order, and decorum." Illinois v. Allen (1970), 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353. The prosecutor has a responsibility to see that the prosecution of a criminal case is fair and just; he must be interested in justice, not just convictions. Berger v. United States (1935), 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. See also the Code of Professional Responsibility, EC 7-13. Misconduct by the prosecutor may form the basis of a new trial where the prosecutor's actions have deprived a defendant of a fair and impartial trial. State v. Bain (1978), 176 Mont. 23, 575 P.2d 919.

During his opening statement, the prosecutor told the jury that he would prove that defendant was in Miles City on or near the date of the theft. He said he would establish that fact by the testimony of two of her friends, one of which was Maryona Johnson. At the outset Johnson was evasive and uncooperative. She admitted that she had seen defendant in the company of two women at Strid's house in May or June of 1979. Defendant objected to the prosecutor's attempt to

elicit a more cogent testimony on the grounds that the prosecutor was attempting to impeach his own witness.

The trial judge properly overruled the objection since under the rules of evidence an attorney can impeach any witness. Rule 607, Mont.R.Evid. A party does not vouch for his or her witnesses, except for expert and character witnesses, because a party's witnesses are not chosen but are those persons who happen to be present and see the events which give rise to the case. Commission Comment to Rule 607 Mont.R.Evid. Under the facts as they exist before us, we can determine no prosecutorial misconduct or prejudicial error to defendant with respect to Johnson's testimony.

Defendant claims secondly that the prosecutor deliberately introduced testimony to impeach a defense witness on matters which were known to him to be improper, incompetent, and collateral. In the trial court, Hart originally gave notice that she planned to call certain alibi witnesses. Hart's counsel withdrew that defense and moved the court for an order limiting the prosecutor from inquiring into any matters concerning that defense. The court ruled that the prosecutor would not be allowed to exceed the scope of direct examination. Defense called Sandy Karst to testify about defendant's physical condition during the spring of 1979. On cross-examination the prosecutor asked Karst whether she had previously made any statement that she was with defendant at defendant's home in Billings on May 24, 1979. Over objection, Karst replied that she had. Defendant deems this an improper attempt to impeach a witness and violative of the court's order to stay within the scope of direct examination.

The State counters that defendant made her physical condition at the time of the theft an issue. On cross-examination, the prosecution attempted to determine if the witness's testimony related to defendant's condition on the day of the theft. To this extent the cross-examination was properly within the bounds of the court order. Since our decision in Kipp v. Silverman (1901), 25 Mont. 296, 64 P. 884, we have consistently determined that cross-examination should be allowed an extended range rather than a limited one. Further, the latitudes of cross-examination are determined by the trial court. It is not within the authority of this Court to disturb the District Court's ruling unless a clear abuse of discretion is shown. State v. Gallaher (1978), 177 Mont. 150, 580 P.2d 930, 35 St.Rep. 848. See also State v. Babella (1978), 177 Mont. 275, 581 P.2d 838, 35 St.Rep. 985. We respect the District Court's judgment in the conduct of the trial and do not find that its discretionary powers were abused.

Defendant further argues on appeal that the court erred in its decision to call Bob Lucas, president of the First Security Bank in Miles City, to the stand to clarify the testimony of Maryona Johnson. Hart claims that Lucas' testimony was completely collateral and wrongfully prejudiced her case. The court, however, felt compelled to call Lucas to verify Johnson's testimony once her credibility had been called into question, especially in view of the fact that Johnson was a major witness for the State on the issue of association.

Rule 614(a), Mont.R.Evid., allows the court to call witnesses and entitles all parties to examine those witnesses. The reason for this prerogative is the usual tendency to

associate an undesirable witness with one party or the other. This problem is met by having the bench call the witness to obtain his or her knowledge of the relevant facts. Commission Comment to Rule 614(a), Mont. R.Evid. Because the authority to call witnesses is expressly granted the District Court by the rules of evidence, and that authority is largely discretionary, we will not disturb the court's decision without a showing of abused discretion or manifest prejudice, neither of which are present here. Accord, United States v. Leslie (5th Cir. 1976), 542 F.2d 285 (applying Rule 614(a), Fed.R.Evid., which is identical to the Montana rule).

Defendant Hart concludes her appeal on the fair trial issue by directing our attention to the prosecutor's closing statement to the jury. In that statement, Hart argues, the prosecutor improperly commented on her refusal to testify during trial. The prosecutor argued to the jury: "The dates. I ask you to reject those dates. You know what the date was. June [Carranza] knows what the date was and the defendant knows what the date was." Defendant asks this Court to conclude that this statement drew the fact of her refusal to testify before the jury, thereby creating in the minds of the jury that she was not testifying because of her guilt. We do not find her argument persuasive.

Read in the context of the prosecutor's entire closing statement, we do not believe that the reference to the dates is properly characterized as a comment on defendant's failure to testify on her own behalf. It merely stressed that the fact of the theft and the fact of defendant's presence in the store on the day of the theft had been proven. It is certainly improper for a prosecutor to comment on a defen-

-8-

dant's refusal to take the stand (Griffin v. California
(1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106), but
this reference to defendant's knowledge is simply too
remote an inference to be prejudicial error. Moreover, the
District Court instructed the jury on defendant's consti-
tutionally protected right to remain silent. Any possible
error or taint caused by the prosecutor's comment was clearly
made harmless by the proper instruction of the jury.


SUFFICIENCY OF THE EVIDENCE

Defendant's second contention is that the evidence
adduced was insufficient to sustain her conviction of theft
by accountability and that the District Court committed
reversible error in submitting the case to the jury. In
support of this point she argues (1) that the State failed
to prove that she intended to promote or facilitate the
theft; (2) that the State's proof of her association with
the two principals was flawed and insufficient to prove
intent; (3) that the State failed to prove that the two
women seen at Dixie Strid's house were indeed the principals
in the crime; (4) that the State failed to prove that Hart's
fingerprints were the same as those found at the scene of
the theft; and (5) that there is not sufficient evidence
generally to uphold defendant's conviction.

Every defendant in a criminal action is innocent until
proven guilty, and it is the burden of the State to prove
the defendant's guilt beyond a reasonable doubt. State v.
Proctor (1969), 153 Mont. 90, 454 P.2d 616. But, it is the
jury's purpose and duty to decide if the State has proved
its case against the defendant by rendering a verdict on the
facts presented. State v. Espelin (1937), 106 Mont. 231, 76

P.2d 629. This Court on appeal is guided by the sound and well-reasoned rule that the determination of disputed questions of fact and the credibility of witnesses is the sole province of the jury. State v. Bubnash (1963), 142 Mont. 377, 382 P.2d 830; State v. Messerly (1952), 126 Mont. 62, 244 P.2d 1054; State v. Robinson (1939), 109 Mont. 322, 96 P.2d 265; State v. Espelin, supra.

With respect to the issue of intent, we note that the jury was instructed on every element of the crime and note with particularity the court's Instruction No. 14: "An act is done 'knowingly' if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason . . ." Reviewing the evidence most strongly in favor of the State, we conclude that there was sufficient evidence for the jury to find that Shirley Hart intentionally committed the crime of theft by accountability.

Both a fingerprint identification and an eyewitness identification placed Hart in Mann Credit Jewelers. June Carranza testified that she was in the store at the same time as the women later arrested as principals in the theft. The evidence also shows that Hart did not associate with the other women, except for the brief and inaudible exchange a few minutes before the theft. This lack of association is inconsistent with the testimony of Maryona Johnson and Dixie Strid that the three women were all together on or near the date of the theft.

The State proved that defendant sent the clerk into the basement for a key and a box for a clock that defendant intended to mail, thereby creating a situation where no one was left on the main floor of the store. The evidence showed that defendant positioned herself in the only area in

-10-

the entire store where the stairs to the basement could be watched; the only logical area in which a "lookout" would stand to make sure that the thieves would have notice of the clerk's return from the basement. The evidence showed that defendant was in the store during the theft. It further showed that defendant said nothing to the clerk of anything unusual happening even though the clerk, while in the basement, heard the sounds of running feet and the bumping of glass.

Carranza further testified that, even in view of the fact that defendant appeared so interested in the purchase of the clock that she wanted a box for it, she left without returning. Moreover, although Carranza's employer would be returning in a matter of minutes at which time the sale of the clock could be made, complete with box and key, defendant hurried away from the store and never returned. Hart's actions were not consistent with those of a genuinely interested shopper. They were consistent with the actions of a "lookout," whose part in the theft was to get the lone clerk off the floor of the store and then watch the stairs while her partners in the crime committed the actual theft.

We are not required to determine Hart's guilt from the above facts. When sufficiency of the evidence is assailed, it is the province of this Court to view evidence which tends to support the verdict and not second-guess the jury or concern ourselves with what we may have done as jurors. State v. McKenzie (1976), 171 Mont. 278, 557 P.2d 1023, vacated 433 U.S. 905, 97 S.Ct. 2968, 53 L.Ed.2d 1089, on remand 581 P.2d 1205, vacated 99 S.Ct. 3094, cert. denied 99 S.Ct. 3103. See also Miles v. Commonwealth (1964), 205 Va. 462, 138 S.E.2d 22.

The jury was fully instructed on its duty and responsibility in evaluating the evidence of intent. It is reasonable to assume that there existed material questions of fact regarding defendant's intent to aid in the theft which, in our system of criminal justice, are decided by twelve jurors. Finally, the decision to submit a case to the jury and deny a motion for directed verdict lies within the ambit of the District Court's broad discretionary powers and should not be disturbed by this Court on appeal in the absence of a clear abuse of discretion. State v. Armstrong (1967), 149 Mont. 470, 428 P.2d 611. The District Court did not abuse its discretion in this case.

Hart argues that the State introduced no evidence at trial that the women seen at Dixie Strid's house were Gunsch and Harris, the principals of the crime. The connective link, Hart argues, was the taking of judicial notice by the court of the State's pleadings against the two women. This, submits defendant, is a failure to prove an element of the crime, i.e. association, and is reversible error. We disagree.

First of all, from the testimony of Dixie Strid:

"Q. Now these four women, referring to Shirley Hart, Maryona Johnson and Mary Gunsch and Donna Harris, how did they arrive at your house? A. Donna and Mary went to my house with me from my bar.

"Q. Do you know how Shirley Hart got there? A. She drove my car or Ernest's car.

"Q. Could you tell me who left first, Shirley Hart or Maryona Johnson? A. I don't remember for sure. We had several drinks."

From this testimony and that of Maryona Johnson, we can find ample evidence to show that Shirley Hart and the two principals, Harris and Gunsch, were indeed associates, at some point near the date of the theft. Hart's argument on

appeal, however, assigns error to the District Court's decision to take judicial notice of the pleadings against the two women, charging them with the actual theft at the jewelry store on May 24, 1979. In essence this means that while the State may have proven the association of the three women, it did not prove that Harris and Gunsch were the principal actors in the theft.

The taking of judicial notice is governed by the provisions of Rule 201, Mont.R.Evid.:

"Judicial notice of facts.

"(a) Scope of rule. This rule governs judicial notice of all facts.

"(b) Kinds of facts. A fact to be judicially noticed must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.

"(c) When discretionary. A court may take judicial notice, whether requested or not.

"(d) When mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

"(e) Opportunity to be heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

"(f) Time of taking notice. Judicial notice may be taken at any stage of the proceeding.

"(g) Instructing the jury. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed."

We can find no error in the District Court's decision to take judicial notice of the fact of the pleadings against Harris and Gunsch, especially in light of the court's instruc-

-13-

tion on judicial notice. We consider initially just what was judicially noticed--the charges against Harris and Gunsch. The fact of the charges against these women was not "subject to reasonable dispute" and, moreover, the fact of the charges was capable of "accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned"--namely, the District Court files which contained the original copies of the charges against the two principals. It is important to note that we are discussing the fact of the charges here and not their validity.

Even if the taking of judicial notice in any way tainted the fairness of defendant's trial, any taint would be eliminated by the instruction given to the jury. The District Court instructed the jury that it was allowed to accept as conclusive any fact judicially noticed but that it was not required to do so. See Rule 201(g), Mont.R.Evid. Having drawn the jury's attention to the pleadings which had been judicially noticed, the court made it clear that the court's decision was not binding on the jury and that they could disregard the fact of the pleadings against Harris and Gunsch. It was then the jury's prerogative to accept or reject the judicially noticed facts as evidence, and we will not disturb its decision. State v. McKenzie, supra; State v. Stoddard (1966), 147 Mont. 402, 412 P.2d 827.

As to Hart's assertion that there was insufficient proof that the fingerprints found at Mann Credit Jewelers were hers, we find her argument more specious than real. The gist of the claim is that the District Court erred in taking judicial notice of defendant's aliases, thereby explaining why the name on the fingerprint card was "Shirley Chittenden" while the fingerprints were those of defendant,

-14-

"Shirley Hart." The State relied on the testimony of finger-print expert, Herbert Bruning. He testified that the finger-prints removed from the glass in Mann Credit Jewelers were those of Shirley Busby Hart a/k/a Chittenden.

When defendant married, she changed only her name, not her fingerprints. Referring again to Rule 201, Mont.R.Evid., we can determine that the fact of defendant's other used names is not subject to reasonable dispute in that they would be "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned," i.e., her birth certificate, marriage certificate, baptismal records, etc. We recognize that there are facts which, "from motives of policy, the law requires a court to judicially notice, or have knowledge of, but of which, in reality, it is ignorant." Holtz v. Babcock (1963), 143 Mont. 341, 390 P.2d 801. When facts are not subject to reasonable dispute, such as in this case, the District Court saves time and money for all parties by taking judicial notice of those facts. See Commission Comment, Rule 201, Mont.R.Evid.

Any merit this argument may have is further diminished when considered in the light of June Carranza's eyewitness identification of defendant as the third woman in the store. The fingerprints were taken from the wineglasses Carranza had shown defendant. When these two pieces of evidence are considered together, we can see very little merit to the claim that the judge should not have taken judicial notice of the fact of defendant's aliases, thereby explaining the discrepancies between the name on the fingerprint card and the current name of defendant.

Finally, defendant claims generally that there was insufficient evidence to uphold her conviction. After a review of the evidence in favor of the verdict and a review of applicable law, we find fully sufficient evidence for the jury to decide that defendant's actions on May 24, 1979, were inconsistent with a hypothesis of innocence.

Mere presence at the scene of the theft, or even failure to interfere with a theft which someone is aware is taking place, is insufficient to hold one accountable as a principal to the crime. People v. Durham (1969), 74 Cal.Rptr. 262, 449 P.2d 198. Further, the actor need not take part in the overt act of the theft, or the actual taking, to be found guilty. People v. Cole (1977), 50 Ill.App.3d 133, 7 Ill.Dec. 848, 365 N.E.2d 133. Although mere presence at the scene of the crime and the failure to disapprove or oppose the crime do not make a person liable, these factors may be considered by the jury, along with other circumstances which may indicate whether the person in some way aided in the commission of the crime. See People v. Nugara (1968), 39 Ill.2d 482, 236 N.E.2d 693, cert. denied, 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261; People v. Crutcher (1979), 72 Ill.App.3d 239, 28 Ill.Dec. 404, 390 N.E.2d 571.

Where the evidence discloses, as it does in this case, that the defendant had an affiliation with the principals of the crime (People v. Cole, supra; People v. Crutcher, supra), that the defendant's conduct after the theft is compatible with the view that she was fleeing the scene (People v. Pendleton (1966), 75 Ill.App.2d 314, 221 N.E.2d 112), that the defendant diverted the attention of the clerk at the exact time the theft took place (Snyder v. Commonwealth (1961), 202 Va. 1009, 121 S.E.2d 452), and that the defen-

dant made no effort to apprise the clerk or the authorities of the fact of the theft which had occurred within a few feet of her (People v. Crutcher, supra), we become convinced that the jury had more than ample evidence of the defendant's guilt. The chain of evidence is a series of circumstances: presence, diversion, silence, association and flight. These elements of the State's proof present a formidable and unbroken chain of facts and events. The evidence was sufficient, and the case properly submitted to the jury.

## PRESENCE DURING PEREMPTORY CHALLENGE

Hart claims that her absence during the final stage of jury selection violated her due process rights and confrontation rights under the constitution. Specifically, she contends that she had a constitutionally guaranteed right to be present during the peremptory challenges of the jury.

In making this argument, Hart cites Snyder v. Massachusetts (1934), 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674, for the proposition that a defendant has a right to be present at all stages of the proceedings where fundamental fairness might be thwarted by her absence. See State v. Peters (1965), 146 Mont. 188, 405 P.2d 642. This Court has held that a defendant's rights are not violated when the matters handled during his or her absence were purely legal. State v. Peters, supra. Hart argues, however, that the peremptory challenges stage of pretrial proceedings is not a purely legal exercise. She cites an Idaho decision as persuasive authority for the rule that voir dire jury selection process is a vital stage of the proceedings at which defendant's presence is essential. Idaho v. Carver (1972), 94 Idaho 677, 496 P.2d 676. Finally, defendant also con-

tends that her failure to object or protest her absence did not result in a waiver of the right. (See State v. Reed (1922), 65 Mont. 51, 210 P. 756, wherein we held that the right to be present at all crucial stages of the proceedings is a nonwaivable right.)

We are of the opinion, however, that the act of peremptorily challenging the jury is a wholly legal exercise and defendant's absence from that stage of the proceedings is in no way violative of defendant's rights. Idaho v. Carver, supra, is not properly relied on by defendant. In that case, defendant was not present at any time during the selection of the jury that ultimately tried him. In this case, however, the record reflects that Hart was absent only during the peremptory challenges. Although defendant's presence may be crucial during the voir dire questioning of the jury, the act of the peremptory challenge of jurors is a pro forma execution of the decisions formulated during questioning. The absence of defendant was not injurious to either her right of due process or her right of confrontation.

JURY INSTRUCTION

Defendant's final assignment of error is directed at the District Court's refusal of her proposed Instruction No. 9, regarding the credibility of witness identification testimony. That proposed instruction is set forth below:

> "Identification testimony is an expression of belief of impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make reliable identification later.

> "In appraising the identification testimony of a witness, you should consider the following:

> "(1) Are you convinced that the witness had a capacity and adequate opportunity to observe the offender?

"Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had occasion to see or know the person in the past.

"(2) Are you satisfied that the identification made by the witness subsequent to the offense was a product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

"If the identification by the witness may have been influenced by circumstances under which the defendant was presented to him for identification you should scrutinize the identification with great care. You may also consider the length of time that elapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant, as a factor bearing on the reliability of the identification."

The State objected to this instruction because it had been offered without any authority. On appeal defendant does not argue that the instruction is a correct statement of the law but only that she was entitled to an instruction on the credibility of a witness's identification of the offender.

Two points sustain our finding that there was no reversible error in the refusal of the District Court to give Hart's jury Instruction No. 9. First of all, the record shows that the jury was told by the judge in Instruction No. 2:

"You are the sole judges of the credibility of all the witnesses who have testified in this case, and of the weight to be given their testimony. A witness is presumed to speak the truth; but this presumption may be repelled by the manner in which he testifies, by the nature of his testimony, or by evidence affecting his character for truth, honesty or integrity, or his motives, or by contradictory evidence; and in determining the weight to be given to the testimony of any witness, you have a right to consider the appearance of each witness on the stand, his manner of testifying, his apparent candor or lack of candor, his apparent fairness or lack of fair-

ness, his apparent intelligence or lack of intelligence, his knowledge and means of knowledge on the subject upon which he testifies, together with all the other circumstances appearing in evidence on the trial." (Emphasis added.)

We are persuaded that the jury was properly and adequately instructed on the credibility of all witnesses, including that of the eyewitness, June Carranza.

We also feel that the circumstances do not dictate the giving of Hart's proposed instruction. Such an instruction may be proper, if not mandatory, in certain cases. The necessity of this type of instruction is especially clear when there is only a single eyewitness's unsubstantiated testimony which identifies the offender. United States v. Masterson (9th Cir. 1976), 529 F.2d 30. But in the case before us, June Carranza's testimony was corroborated by the presence of defendant's fingerprints on the wineglasses. Although the fingerprints are not without dispute, we find that even given that dispute as valid, they are sufficiently supportive of Carranza's testimony to amply justify the refusal of defendant's proposed Instruction No. 9.

We conclude, therefore, that the conviction of Shirley Hart should be affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

This cause was submitted prior to January 5, 1981.

Mr. Justice Daniel J. Shea will file a separate opinion later.

-20-