THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY ANDERSON *et al.*, Defendants-Appellants.

First District (1st Division)   No. 62894

Opinion filed March 7, 1977.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Anthony Anderson and Ulysses Floyd (defendants) were found guilty on three counts of armed robbery. Each was sentenced to 10 to 30 years. Defendants have appealed.

In this court, defendants contend that reversible error resulted from the introduction in evidence of defendants' post-arrest silence in the face of accusations and from comment on this testimony during closing

argument. Defendants also assert that they were denied a fair trial by the prosecutor's final argument that the testimony of a complaining witness had been consistent with his grand jury and preliminary hearing testimony and that the trial court abused its discretion in refusing to allow defendants a midtrial opportunity to interview State witnesses whose current addresses had been improperly listed in the State's answer to discovery. The State responds that the evidence of defendants' silence was properly received as tacit admissions of guilt; comment on prior consistent statements was invited by the defense final argument; the State's answer to discovery was proper and the court did not abuse its discretion in denying a continuance.

Defendants have not challenged the sufficiency of the evidence. However, a summary of the testimony is essential. Shirley Talley testified for the State that at 11 p.m. on December 5, 1974, she and Thomas Brock went to Carl Irving's apartment. Brock entered the building first and, after waiting several minutes, the witness also entered. She proceeded to the first floor landing where Irving's apartment was located. A man she identified in court as Anthony Anderson (defendant) came out of the apartment and ordered her inside at gunpoint. She fled downstairs with Anderson in pursuit and he pushed her so that she fell through the glass portion of the front door. Anderson ordered her into the apartment and then into the kitchen. When she entered the apartment she was told to drop her purse by one of the other men, which she did. She was then forced to lie face down on the kitchen floor with Brock, Carl Irving and another woman.

At the time she entered the apartment, her purse contained two rolls of quarters, $60 and other items. While lying on the floor, she heard people going in and out of the apartment and up and down the stairs. After the robbers had left, she discovered her empty purse in the hallway. The witness denied that she and Brock had gone to Irving's apartment to purchase narcotics.

Carl Irving testified that he lived at 8116 S. Ingleside on December 5, 1974. He had moved since then. At about 11 p.m. he was home with two friends, a young woman and Thomas Brock, when Laura Hedgeman, an acquaintance, arrived. She was accompanied by a man the witness identified in court as defendant Anderson. While Hedgeman was making a phone call in the bedroom, Anderson entered the kitchen and robbed Brock and Irving at gunpoint. Irving also testified that Anderson took his cash and keys and put the cash in his sock and rear pocket. On cross-examination, defense counsel demonstrated a discrepancy of $10 between the amount the witness said was taken from him ($35) and his testimony on the same point before the grand jury ($45).

Anderson then forced Irving and Brock onto the kitchen floor. While

lying there, the witness heard the doorbell ring twice. The first time, Brock got up and admitted two people whom the witness did not know. Irving testified he heard drawers being pulled out in the apartment. When the bell rang again, Brock answered the door and the witness heard running on the stairs and then Shirley Talley was brought into the kitchen. He heard what sounded like equipment being moved out. After the robbers left, the witness heard running and saw a police car outside.

At a later date, Irving went to the police station and recovered the property he had found to be missing from his apartment. This included two television sets, recording tape, two "hi-fi's" and phonograph speakers, a movie camera, walking cane, electrical box and costume jewelry. The witness denied that Anderson had paid him $1200 for heroin prior to the offense in question.

Thomas Brock testified to the same version of events as had Irving and Talley. He admitted that at the time of trial he was serving time in a Federal honor camp for felony possession of a controlled substance. In addition, he testified that he had gone to Irving's apartment to repay a loan. He was carrying between $350 and $400 in cash, including a hundred dollar bill. Anderson took this money from him at gunpoint and put it in his sock and pocket. The witness further testified he was ordered to open the front door when the bell rang, and when he did so, two men entered. Each was carrying a revolver. He identified defendant Floyd in court as one of these men. The witness later observed Floyd carrying stereo equipment and television sets out of the apartment. While the property was being taken, Anderson "had the gun on everybody."

After the robbers left, Brock went out of the front door of the building and saw Anderson in custody beside a squad car. The witness testified tht he then told the police that Anderson was "one of the guys that had just got through sticking us up." Brock also told the police that a second man they had brought to the car (defendant Floyd) "was the other man that was with him, in the green, with this guy [Anderson] sticking us up." Without defense objection, he testified that both Anderson and Floyd said nothing in response to these accusations. The witness identified People's Exhibit 4, a revolver, as the one Anderson had used during the robbery.

Patrolman Purtell testified that on December 5, 1974, at 11:45 p.m., he and his partner drove to 8116 S. Ingleside in response to a burglary in progress radio call. They got out of the car and observed three men run out of the gangway at the side of the building. The officers ordered the men to halt and they dropped their weapons. Upon being again told to halt, the men started running. The witness apprehended defendant Anderson and searched him. He had money in his front pocket and two rolls of quarters in his back pocket. The officer testified without objection

that Brock came running out of the building yelling "You got them Officer, they just robbed me" and that Anderson said nothing. The other officer then brought defendant Floyd to the car. Floyd was the same man Officer Purtell had seen with Anderson running out of the gangway. The witness also testified to Brock's accusation of Floyd and that Floyd had said nothing. Defense counsel's objection and motion to strike were overruled and denied.

The officers then placed defendants in the car and went to the alley behind the apartment building. There they observed two other police officers, a squad car and an automobile with an open trunk. The witness saw stereo equipment, television sets, a radio and a cane inside the trunk. Laura Hedgeman was in the back seat of the other police car. Later, at the police station, the witness searched Anderson and inventoried the money found in his front and rear pockets and "stuffed in his stockings." The cash included a hundred dollar bill and house keys which were returned to Carl Irving.

Officer Hofer, Purtell's partner, testified to the same course of events. In particular, the witness testified that he had chased defendant Floyd through the gangway and up the back stairs. Once Floyd was brought to the squad car, Brock told Purtell that Anderson was one of the robbers and Anderson said nothing at the time. An objection to this testimony was overruled. The witness continued that Brock identified Floyd as one of the offenders. At the police station, the officer searched Floyd and recovered jewelry from the suspect's pockets. This jewelry was identified at trial by Carl Irving as having been usually kept in the apartment.

Defense witness Doris Robinson, defendant Anderson's fiancee, testified that between December 5, 1974, and the date of trial, July 1, 1975, she had spoken with Carl Irving about 20 times. She had given Irving money on several of these occasions beginning in March 1975, including four payments totalling $500. She also gave Brock $550. She denied that the money was in return for "dropping the charge." She testified that Brock told her he wanted the cash "because he had lost a lot of drugs, he wanted to recoup." Irving wanted the money because he had to move from his apartment and he was paying to keep his furniture in storage.

She also testified that two nights ago Carl Irving had called her and said he was being forced to come to court by two assistant State's Attorneys. Irving said that he had a prior record involving a policy ring and the attorneys told him that if he didn't testify consistently with prior testimony he would be prosecuted. Previously, during cross-examination, Carl Irving admitted having talked with Robinson the night before but denied her version of the conversation. He also denied asking for or

receiving money from her. Robinson also testified that on the day of the robberies she gave Anderson some money, including a hundred dollar bill.

Darlene Hudson, fiancee of defendant Floyd, testified that Irving had called her the previous Monday night and told her that a State's Attorney had threatened "to jam him on a case" if he didn't testify. She testified that Irving also said, "I will give you back the money * * * maybe I can say that I forgot, I don't know because that will be committing perjury * * *." Hudson also testified that she had given Irving money because "he wanted to make restitution * * * for the case because he said it was a misunderstanding from the beginning * * * and all he wanted was the money that he had lost" because the landlord had forced him to move. She testified that the money was paid to Irving for "any damage, any inconvenience" the defendants may have caused.

The witness testified that at the time of grand jury proceedings she heard a policeman tell Carl Irving, outside the grand jury room, that he would have to testify before the police would return his property. Hudson also testified that she heard Irving being threatened at a restaurant the previous Monday night. The threats were that Irving would be prosecuted for tax evasion and were made by an investigator, apparently connected with the Internal Revenue Service. Sheriff's Officer Willer was in the restaurant at the time.

Defendant Anderson testified that he met Brock in October 1974 and saw him on two later occasions at Irving's apartment. On December 4, 1974, he purchased an ounce of heroin for $1200 from Irving and Brock. The next afternoon he called Irving to complain that the drugs were "no good." Later that evening he accompanied Floyd to Irving's apartment to straighten the matter out. When they arrived, they saw that the front door glass had been broken. After they were admitted, Anderson noticed that Irving had a gun, identified as People's Exhibit 4. Anderson demanded his money back and Irving refused. In the ensuing argument, Irving reached for his gun and they tussled. Someone said "it's a raid." Anderson and Floyd ran out the back door. On cross-examination, Anderson categorically denied that he had committed an armed robbery upon Brock, Irving or Talley. He stated that he did not see Shirley Talley in the apartment. Also on cross-examination, defendant Anderson admitted that he was present when Brock accused him of the robbery. After a defense objection was overruled, he also admitted that he did not tell the police that he "didn't stick nobody up." Defendant Floyd did not take the stand.

Officer Willer testified on rebuttal that he had spoken with Irving on the telephone but had issued no subpoenas for Irving's appearance at trial. He contradicted Hudson's testimony that threats were made to Irving in the restaurant by an assistant State's Attorney or by a revenue agent.

■■ Turning to defendants' first contention relating to admissibility of their post-arrest silence, we must consider the State's initial response that the point has been waived. It has been repeatedly held that all points not raised in a defendant's written motion for new trial are waived for purposes of appellate review. (*People v. Howell* (1975), 60 Ill. 2d 117, 120-21, 324 N.E.2d 403; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, and cases there cited.) In defendants' motion for new trial, no objection was raised concerning introduction of evidence of post-arrest silence. This testimony was not challenged in the motion. Consequently, the error, if any, was waived.

In addition, upon careful consideration of the record before us, we conclude necessarily that we do not reach this issue because the error, if any, was harmless beyond a reasonable doubt. *Milton v. Wainright* (1972), 407 U.S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174; *Schneble v. Florida* (1972), 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056; *Harrington v. California* (1969), 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726.) The evidence against defendants was definitely overwhelming. Identification of both defendants and their presence at the time and place of the alleged crime is agreed by all who testified. Flight by defendants and their possession of property recently stolen are established beyond doubt by the testimony of Brock, Irving, Talley and the arresting officers. The finances of the defendants directed their testimony to collateral matters and attempted to discredit Irving thereby. However, the testimony of Irving is strongly corroborated by that of Brock and Talley and it is effectively supported beyond dispute by all of the physical evidence and by the unassailed testimony of the police officers. Defendant Floyd did not testify. The testimony of Anderson is an admission that he went to the apartment to complain about allegedly bad narcotics and that Irving started a brawl and Anderson and Floyd then fled. On cross-examination he categorically denied that he had committed an armed robbery. This testimony is completely negated by the strength of the prosecution evidence.

■■ We conclude that, even assuming validity of the defendants' claim of error in admission of evidence of silence in the face of spontaneous accusations, the error was harmless beyond a reasonable doubt and had no significant effect in bringing about the verdict. See *People v. Fields* (1974), 59 Ill. 2d 516, 521, 322 N.E.2d 33.

■■ Defendants next claim that they were denied a fair trial when the court overruled objections to remarks by the prosecutor during final argument to the effect that defendants failed to contradict Irving's testimony at the preliminary hearing at which Irving testified "to the same thing." Defendants correctly argue that these remarks were improper. The contents of Irving's preliminary hearing testimony were not proved

at trial, therefore the prosecutor's remarks were not based on record evidence and must be severely criticized. See, *e.g., People v. Patterson* (1976), 44 Ill. App. 3d 894, 896-97, 358 N.E.2d 1164, 1166-67.

In view of the overwhelming evidence of guilt as above analyzed, we state that, in our opinion, beyond reasonable doubt this error in ruling upon an objection to final argument was harmless and did not affect the verdict. We reach the same result with reference to the contention of defendants regarding comment by the prosecutor on silence of defendants in the face of Brock's accusations. In our opinion, neither of these comments to the jury could have constituted a material factor in the conviction. *People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363.

The cases cited by defendants do not require a contrary result. *People v. Lowe* (1967), 84 Ill. App. 2d 435, 228 N.E.2d 563, and *People v. Robinson* (1973), 14 Ill. App. 3d 135, 302 N.E.2d 228, are primarily concerned with alleged prejudicial effect of tendering statements of witnesses to opposing counsel in the presence of the jury. Neither case involved overwhelming evidence as in the case before us. In fact, in *Robinson*, the conviction was affirmed.

Finally, defendants argue that they were denied an opportunity to interview the State's witnesses because the State's answer to discovery listed an incorrect address for Carl Irving and the court denied defendants' motion for a continuance to interview the witness.

After defense counsel had answered ready for trial and before jury selection had begun, the prosecutor handed to counsel the State's answer to discovery and police reports. The answer listed Carl Irving, 8116 S. Ingleside, Chicago, as a possible State witness. Irving had also been named as a victim on the indictment for robbery.

At the start of the second day of trial, defense counsel told the court: "[W]e would like to talk to the witnesses before they testify," referring to an unspecified supreme court rule. The prosecutor said that Carl Irving had "been living at the same location for over twenty years." Defense counsel informed the court that he had "reason to believe he was not living there" and that Irving had moved. The assistant State's Attorney stated that he had no objection to allowing an interview with the witness. The court denied the request, noting the fact that "[b]oth sides answered ready * * *." Carl Irving then testified. On cross-examination he stated that since December 5, 1974, he had moved from the Ingleside address.

■■ Illinois Supreme Court Rule 412(a)(i) provides: "[T]he State shall, upon written motion of defense counsel, disclose to defense counsel * * * the names and last known addresses of persons whom the State intends to call as witnesses * * *." (Ill. Rev. Stat. 1975, ch. 110A, par. 412(a)(i). See also Ill. Rev. Stat. 1975, ch. 38, par. 114—9(a).) The purpose of requiring the State to furnish a list of prosecution witnesses is "to

prevent surprise and afford an opportunity to combat false testimony." (*People v. Raby* (1968), 40 Ill. 2d 392, 401, 240 N.E.2d 595.) This principle is consistent with the overall purpose of discovery rules, to prevent surprise or unfair advantage. (See, *e.g., People v. Watkins* (1975), 34 Ill. App. 3d 369, 373, 340 N.E.2d 92.) Accordingly, defendants have the burden of showing that surprise or other prejudice resulted from noncompliance with the requirement that the State supply names and addresses of prospective witnesses. See *People v. Steel* (1972), 52 Ill. 2d 442, 450, 288 N.E.2d 355; *People v. Allen* (1971), 132 Ill. App. 2d 1015, 1023, 270 N.E.2d 54, *appeal denied* (1971), 48 Ill. 2d 593.

■■ The record does not support the conclusion that the State failed to meet its burden under Rule 412 to furnish "last known addresses." Defendants point to the testimony of Officer Willer that he had spoken with Irving on the telephone at an unspecified time as evidence that the State knew Irving's new address. The officer also testified that he did not issue or serve a subpoena for Irving's appearance. These facts, in addition to the record as above summarized, are insufficient to prove that the State did not list the last address for Carl Irving regarding which it had knowledge or that it acted in bad faith. We conclude that no violation of Rule 412 has been established by defendants.

We do not find any prejudice or unfair surprise demonstrated in this record. A "claim of prejudice cannot be founded on mere conjecture." (*People v. Lewis* (1974), 60 Ill. 2d 152, 158, 330 N.E.2d 857.) For the same reasons we conclude that the trial court did not abuse its discretion in failing to provide a mid-trial opportunity to interview Irving. See *People v. Davis* (1970), 45 Ill. 2d 514, 261 N.E.2d 314; *cf. People v. Schabatka* (1974), 18 Ill. App. 3d 635, 643, 310 N.E.2d 192, *cert. denied*, 420 U.S. 928, 43 L. Ed. 2d 400, 95 S. Ct. 1128.

The principal case relied on by defendants, *People v. Mourning* (1975), 27 Ill. App. 3d 414, 327 N.E.2d 279, does not require reversal here. In *Mourning*, the State delayed until the day before trial in providing the names of two witnesses not listed on the indictment. A third witness was listed, although he had been dead for over a month. The addresses given listed a named city without street addresses. The court permitted a recess for defense counsel to interview the witnesses. On appeal, the conviction was reversed. The court held that the State had acted in bad faith and, as a result, defendant's sixth amendment rights had been violated. 27 Ill. App. 3d 414, 420-21.

The judgments appealed from are accordingly affirmed.

McGLOON and BUA, JJ., concur.