THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RA CHAKA, Defendant-Appellant.

First District (5th Division)    No. 76-1620

Opinion filed December 2, 1977.

James Geis and Richard Geddes, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial defendant was convicted on two counts of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2) and was sentenced to a term of 20 to 60 years on each count. The sentences are to run concurrently. On appeal, he contends that the trial court erred when it: (1) denied his motion *in limine* to exclude evidence of a prior conviction; (2) convicted him on two counts of armed robbery for a single robbery; and (3) abused its discretion in sentencing him.

During the pretrial proceedings, defendant repeatedly called the judge a racist and insane, and interrupted the court demanding to represent himself. Consequently, defendant was excluded from most of both the jury selection and the trial. Prior to trial defendant filed a motion *in limine* requesting that the court prohibit the State from introducing evidence of

defendant's 1966[1] conviction for armed robbery. The court denied defendant's motion. Thereafter, the following pertinent evidence was adduced at trial.

*For the State*

*Frances Trojan*

She is a saleslady at Fannie May Candies, 26 East Randolph Street, Chicago. At about 2 p.m. on September 11, 1974, she waited on a man she later identified as defendant. He asked for some "Dixie" candy. After weighing it, she placed it in a Fannie May bag and asked defendant for $.99. He gave her $1. She rang up the sale and gave him a penny in change and his candy. Defendant then said, "ring it again." She told him she had already rung up the sale, but defendant repeated his demand and pointed to a gun lying in front of his attache case on the counter. Defendant then said, "Give me the money from the register."

She removed the bills and change from the register and put them in separate Fannie May bags. She then handed the bags to defendant. While she was doing this, the store manager, Helen Mileski, walked up and asked her what was the matter. She told her that defendant had a gun. Helen got down behind the counter, but defendant told her to stand up, which she did. After gathering up the bags defendant fled through the front door on Randolph Street, heading west toward State Street. He turned north into an alleyway, a few doors down. Thereafter, both she and Helen described defendant to a police officer, who had arrived at the store. Later that afternoon she picked defendant out of a lineup at police headquarters.

Altogether defendant took about $60. She identified People's Exhibits Nos. 2 and 3 as similar to the gun and attache case defendant carried.

*Helen Mileski*

She manages the Fannie May store at 26 East Randolph Street, Chicago. In addition to substantially corroborating Frances Trojan's testimony, she stated that defendant was in the store about five minutes. She called the police within seconds after defendant's departure, and a policeman arrived "very shortly." She also identified defendant from a lineup at police headquarters.

*Michael E. Clancy, Chicago Police Officer*

He patrols the Chicago Loop and business district on foot. He was at the intersection of Lake and State Street when sometime after 2 p.m. on September 11, 1974, he responded to a radio call concerning this robbery. As he walked south of State toward Randolph he observed defendant coming out of an alley midway betwen Randolph and Lake and walk

---

[1] The record is in conflict as to whether this conviction was in 1966 or 1967.

south. He approached defendant at the cashier's booth of the Loop Theatre and placed him under arrest. Defendant attempted to flee, but he only got about five feet before being apprehended. Defendant had a brown attache case from which he attempted to remove an object. After handcuffing defendant, he opened the attache case and found a .32-caliber pistol and three Fannie May candy bags. Two of the bags contained money amounting to $57.66. The third bag contained candy.

The jury found defendant guilty of the armed robbery of both Frances Trojan and Helen Mileski. Prior to sentencing defendant, the court noted that defendant had waived a presentence investigation by not co-operating with the Probation Department. After hearing arguments in aggravation and mitigation, the court stated:

> "[I]n light of the conduct the defendant has displayed through the trial and in light of the fact I don't see any possibility of any rehabilitation on behalf of the defendant, [he is] sentenced to the Illinois State Penitentiary, a minimum of 20 to a maximum of 60 years.
>
> When that sentence is completed he will do six months for contempt of court, for which I held him."

OPINION

■■ Defendant initially contends that the trial court erroneously denied his motion *in limine* to exclude evidence of his 1966 conviction for armed robbery. However, defendant failed to include this issue in his written post-trial motion. All points not raised in a defendant's written post-trial motion are waived for purposes of appellate review. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857; *People v. Anderson* (1977), 46 Ill. App. 3d 607, 613, 360 N.E.2d 1371, 1375.

■■ Nor shall we reach this issue through Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)). That rule allows us to consider plain errors which affect substantial rights where the evidence is closely balanced. However, because the evidence of guilt here is overwhelming, we will not exercise the discretion granted us under Rule 615(a). Compare *People v. Gentry* (1977), 48 Ill. App. 3d 900, 363 N.E.2d 146.

■■ Defendant next contends and the State agrees that the court erred in convicting defendant on two counts of armed robbery, one of Frances Trojan and one of Helen Mileski. Because defendant took all the money from one person, Frances Trojan, he committed only a single act of robbery. The facts here are identical to those in *People v. Hunter* (1976), 42 Ill. App. 3d 947, 356 N.E.2d 822, and *People v. Scott* (1974), 23 Ill. App. 3d 956, 320 N.E.2d 360, *cert. denied* (1975), 423 U.S. 844, 46 L. Ed. 2d 65, 96 S. Ct. 80. Both cases held that a court may not enter more than one judgment or impose more than one sentence where a defendant commits

a single act of robbery even though two victims are present, both have custody of the property taken, and both are threatened. We agree and therefore reverse defendant's conviction for the armed robbery of Helen Mileski.

■■ Defendant also contends that his sentence is excessive. As a Class I felony (Ill. Rev. Stat. 1973, ch. 38, par. 18—2) a conviction for armed robbery carries a minimum sentence of four years. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).) However, a trial court is authorized to set a higher minimum sentence where in its discretion the nature and circumstances of the offense and the history and character of the defendant require. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).) Although this court has the power to reduce a sentence (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)) our supreme court has indicated that this power should be exercised with considerable caution and circumspection. (*People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.) In mitigation, defendant points out that no injuries were inflicted and little money was taken during the robbery. He argues that this, coupled with the fact that he had only one prior conviction, indicates that his sentence is disproportionate to the offense committed. However, the trial judge who ordinarily is in a better position than the reviewing court to consider these matters, had these factors before him at the hearing on aggravation and mitigation. (*People v. Hampton* (1969), 44 Ill. 2d 41, 253 N.E.2d 385.) Moreover, contrary to defendant's assertion that he had only one prior conviction, the State introduced evidence of five prior convictions, including sentences for armed robbery, aggravated assault and aggravated battery. Notwithstanding the other mitigating factors defendant cites, he was a principal in an armed robbery, using a .32-caliber pistol to threaten his victims. When Officer Clancy apprehended him defendant attempted to draw his gun on the officer in a crowded downtown area. Given the nature and circumstances of the offense as well as defendant's prior criminal record, we see no reason to reduce the carefully considered sentence imposed by the trial judge.

■■ Nor do we find merit in defendant's suggestion that the court erroneously considered defendant's conduct at trial in sentencing him. Although the trial judge remarked that defendant's conduct at trial was a factor he considered in sentencing defendant, a trial judge may consider defendant's conduct and demeanor at trial in weighing his potential for rehabilitation. (See *People v. Kelly* (1975), 25 Ill. App. 3d 753, 760, 324 N.E.2d 82, 87.) Here, defendant's conduct at trial was particularly antisocial and uncooperative. Moreover, we note that the court also sentenced defendant for contempt of court. Accordingly, it seems clear that the court realized that although defendant's conduct at trial, insofar as it reflects on his character, may indirectly affect his sentence on the

substantive offense, it also realized that any punishment for improper conduct at trial should be meted out separately.

For the foregoing reasons, defendant's conviction and sentence for the armed robbery of Helen Mileski is reversed. The remainder of the judgment is affirmed.

Reversed in part; affirmed in part.

SULLIVAN, P. J., and WILSON, J., concur.