UNITED STATES of America ex rel. Ulysses FLOYD and Anthony Anderson, Petitioners,

v.

WARDENS, PONTIAC AND JOLIET CORRECTIONAL CENTERS, Respondents.

No. 79 C 813.

United States District Court, N. D. Illinois, E. D.

Nov. 21, 1979.

234

James J. Doherty, Public Defender, and James L. Rhodes, Asst. Public Defender of Cook County, Chicago Ill., for petitioners.

William J. Scott, Atty. Gen., Springfield, Ill. and Michael Vujovich, Chicago, Ill., for respondents.

## MEMORANDUM OPINION

*Motion for Summary Judgment*

MAROVITZ, District Judge.

Petitioners, Ulysses Floyd and Anthony Anderson, petition this Court for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241–2254. Petitioners, after a jury trial, were jointly found guilty of three counts of armed robbery. Each was sentenced to serve ten to thirty years in the Illinois State Penitentiary. On direct appeal, petitioners' convictions were affirmed by the Illinois Appellate Court, First District. *People v. Anderson*, 46 Ill.App.3d 607, 4 Ill.Dec. 938, 360 N.E.2d 1371 (1977). Thereafter, petitioners filed a petition for leave to appeal to the Illinois Supreme Court, and that petition was denied.

Petitioners alleged that their Fourteenth Amendment rights were violated at trial when (1) two of the State's witnesses were allowed to testify as to petitioners' post-arrest silence, (2) the state cross-examined petitioner Anderson concerning his post-arrest silence, and (3) the prosecutor, during final summation, commented upon petitioners' post-arrest silence. Therefore, having both exhausted their state judicial remedies and alleged errors in connection with their state conviction of a constitutional dimension, petitioners' habeas corpus petition is properly before this Court. 28 U.S.C. § 2254.

Pending before this Court is respondent's motion to dismiss. Fed.R.Civ.P. 12(b)(6). Pursuant to Rule 12(b), the Court treats respondent's motion as one for summary judgment, and, further, there being no gen- uine issue of material fact present herein, the Court finds that this action is ripe for summary judgment. Fed.R.Civ.P. 56. For the reasons set forth below, respondents' motion is denied.

On December 5, 1974, petitioners were arrested for the armed robbery of Carl Irving, Thomas Brock, and Shirley Talley. The alleged robbery took place at Irving's apartment. At the scene of the arrest both petitioners were confronted with accusations by the alleged robbery victims and both petitioners stood silent in the face of the accusations. The record is silent as to whether prior to this time petitioners had been given their *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965).

At trial, petitioner Anderson denied committing an armed robbery and testified that he and petitioner Floyd had gone to Irving's apartment in order to settle a dispute over a recent drug transaction involving petitioners, on the one hand, and Irving and Brock, on the other hand. Petitioner Floyd did not take the stand. The State elicited from two of its witnesses the fact of petitioners' post-arrest silence. Tr. 317, 318, 346, 347. Objections were made as to two of these comments upon petitioners' post-arrest silence and both objections were overruled. Tr. 318, 347. During cross-examination of petitioner Anderson, the prosecutor questioned him as to his post-arrest silence and an objection was again made and overruled. Tr. 474. During summation, the prosecutor once more focused in upon petitioners' post-arrest silence. Tr. 521–23. Petitioners' counsel again objected and the court again overruled the objections. Tr. 522–23. With regard to these references to petitioners' postarrest silence, the only instruction given by the court which could even arguably be deemed curative was the standard closing instruction to the effect that the arguments of counsel are not to be considered as evidence. Tr. 571. After the jury returned a verdict of guilty against petitioners on all three of the armed robbery charges, petitioners filed a motion for a new trial which contained a

general objection to the fairness of the trial, R. 40(b), and a specific objection to the prosecutor's comments during closing argument concerning the petitioners' post-arrest silence. R. 40(c). Petitioners' motion for a new trial was denied. Upon appeal to the Illinois Appellate Court, petitioners' convictions were affirmed on the grounds that any infringement upon petitioners' Fourteenth Amendment rights at trial was harmless error. *People v. Anderson*, 46 Ill. App.3d 607, 4 Ill.Dec. 938, 360 N.E.2d 1371 (1977).

■ Respondents' motion raises several preliminary issues which the Court must address before reaching the merits of petitioners' claims. First, defendant contends that petitioners neglected an Illinois procedural rule requiring that all points of objection not raised in a defendant's motion for a new trial are deemed waived. *E. g., People v. Howell*, 60 Ill.2d 117, 324 N.E.2d 403 (1975). Specifically, respondent contends that petitioners' motion for a new trial did not include an objection to the complained of testimony. Therefore, respondent argues, this Court may not hear petitioners' constitutional claims in the context of a habeas corpus proceeding because petitioners have not made the requisite showing of both cause for the alleged neglect of the state procedure and actual prejudice as a result of the asserted constitutional error. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The Illinois Appellate Court agreed with respondents' contention and stated that petitioners had not presented an objection to the challenged testimony in their motion for a new trial. Arguably, that court's finding is in error in view of the general objection complaining of the overall fairness of the trial found in ¶ 19 of petitioners' motion for a new trial. R. 40(b). However, the Court finds that it need not reach the waiver issue presented by respondents. Because the Illinois Appellate Court did not assert the waiver rule as a bar to its consideration of petitioners' constitutional claims, but rather decided petitioners' claims on the merits, *People v. Anderson*, 46 Ill.App.3d at 613, 4 Ill.Dec. 938, 360 N.E.2d at 1375, respondents can

not now contend that petitioners' alleged waiver of their constitutional claims stands as a bar to this Court's consideration of the merits of those claims pursuant to a habeas corpus petition. *Warden v. Hayden*, 387 U.S. 294, 297 n. 3, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Bradford v. Stone*, 594 F.2d 1294 (9th Cir. 1979).

■ Respondents next argue that petitioners did not make timely objections to the challenged references to petitioners' post-arrest silence and, therefore, this Court may not notice the alleged errors unless they are found to be plain errors. This argument is without merit on two grounds. First, petitioners did object to the comments made during closing argument, Tr. 522–23, and to certain of the challenged testimony. Tr. 318, 347, 474. Second, it is clear that the solicitation of testimony concerning an accused's post-arrest silence or comments upon such silence during closing argument does constitute plain error. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1975); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1973); *People v. Monaghan*, 40 Ill.App.3d 322, 352 N.E.2d 295 (1976).

■ Finally, respondents assert that this Court should apply one of various tests with respect to the asserted trial errors in order to determine whether the errors deprived petitioners of fundamental due process and therefore rise to the level of constitutional error, citing *United States v. Chatham*, 568 F.2d 445 (5th Cir. 1978); *United States v. Millet*, 559 F.2d 253 (5th Cir. 1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 759 (1978); *United States v. Corona*, 551 F.2d 1386 (5th Cir. 1977). Respondents' contentions here are misplaced. *See, e. g., Donnelly v. DeChristoforo*, 416 U.S. at 643, 94 S.Ct. 1868, 40 L.Ed.2d 431. The cases cited by respondent all concern instances of general prosecutorial misconduct—*e. g.*, a prosecutor interjecting into closing argument his personal opinion as to the merits of the case, *United States v. Corona*, 551 F.2d 1386—wherein courts will attempt to determine whether the com-

plained of conduct amounted to a constitutional violation. In such circumstances, prosecutorial misconduct will require a new trial only when the defendant has been deprived of a fundamentally fair trial as guaranteed by the due process clause. However, when prosecutorial conduct is alleged to patently run afoul of a specific constitutional guarantee, as in the instant case, and the record reveals the allegation to be true, a new trial must be ordered unless it can be shown that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966).

■ Thus, the court turns to the merits of petitioners' claims. It is well-established that explicit references by the State to an accused's post-arrest silence, either through elicited testimony or during closing argument violates the accused's Fourteenth Amendment rights. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1975). This is true even when the State attempts to use an accused's post-arrest silence only for impeachment purposes. *Id.* Therefore, in the instant case, both the prosecutor's introduction of testimonial evidence and his comments during closing argument constituted clear abridgements of petitioners' constitutional rights. The Court finds no significance in the fact that the record is silent as to when, if ever, petitioners were given their *Miranda* warnings on the evening of their arrest. *United States ex rel. Allen v. Rowe*, 591 F.2d 391 (7th Cir. 1979); *Bradford v. Stone*, 594 F.2d 1294 (9th Cir. 1979). *Contra, Bradley v. Jago*, 594 F.2d 1100 (6th Cir. 1979). Although the logic of the prohibition against references to an accused's post-arrest silence is especially compelling where *Miranda* warnings have been given, *United States v. Hale*, 422 U.S. 171, 182–83, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (Stewart, J., concurring), silence at the time of arrest is "inherently ambiguous even apart from the effect of *Miranda* warnings." *Doyle v. Ohio*, 426 U.S. 610, 617–18 n. 8, 96 S.Ct. 2240, 2244 n. 8, 49 L.Ed.2d 91 (1975).

Further, the prejudicial effect of the references to the petitioners' post-arrest si-

lence during trial was seriously compounded by errors committed by the trial judge. The minimal duty of a trial judge when confronted with references to an accused's post-arrest silence is to strike the references and give a curative instruction to the jury upon proper objection. *United States v. Buege*, 578 F.2d 187 (7th Cir. 1978), *cert. denied*, 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183; *United States v. Handman*, 447 F.2d 853 (7th Cir. 1971); *United States v. Matos*, 444 F.2d 1071 (7th Cir. 1971). Arguably, it is the judge's duty to give such an instruction *sua sponte*. *See Lussier v. Gunter*, 552 F.2d 385 (1st Cir. 1977), *cert. denied*, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 124.

Moreover, a reference to an accused's post-arrest silence will not generally be deemed harmless unless a curative instruction is given immediately after the reference. *United States v. Handman*, 447 F.2d at 855. In this connection, the Court notes that with respect to the similar error of prosecutorial comment upon an accused's failure to testify, the First Circuit has adopted a *per se* rule of reversal where the judge fails to give an immediate curative instruction. *United States v. Flannery*, 451 F.2d 880 (1st Cir. 1971). In the absence of an immediate curative instruction, emphatic and specific closing instructions should be given, as opposed to the usual closing instructions. *United States v. Handman*, 447 F.2d at 855.

In the instant case, every objection made by petitioners' counsel concerning the references to petitioners' post-arrest silence was promptly overruled. Tr. 318, 347, 474, 522–23. Obviously, no immediate curative instructions were given. Further, the judge gave no closing instruction to the jury to the effect that petitioners' post-arrest silence could not be used against them. Thus, the trial judge contributed to the prejudicial effect of the errors committed by the State by failing to sustain the objections of counsel, when made, and by failing to give appropriate curative instructions. During the closing argument of the prosecutor the following colloquy took place:

STATE'S ATTORNEY FICARO: What happens then? If the case were over

then you receive evidence of proof beyond a reasonable doubt, but what happens then? Mr. Brock comes running out of the apartment and he says to Officer Purtell "that is the man that just robbed us and threw my wife through the plate glass window," and he is trying to strike him, and he tried to hit him. Now what would be your reaction, ladies and gentlemen? He goes after him, he tries to hit him. And what does the defendant Anderson do? Just stands there. After all he was there on the purchase of some poor quality dope as he said. Is he just going to stand there and say you know you are right, I robbed you.

DEFENSE COUNSEL MOORE: Objection.

DEFENSE COUNSEL PTACEK: Objection.

THE COURT: Overruled.

STATE'S ATTORNEY FICARO: You want to believe that ridiculous story? What would the natural reaction be—what are you talking about?

DEFENSE COUNSEL MOORE: Objection, a man's silence is not to be construed against him, and that is the law.

THE COURT: Objection overruled.

STATE'S ATTORNEY FICARO: Thank you, your honor.

STATE'S ATTORNEY PIERCE: Thank you, Judge, for ruling on the law.

STATE'S ATTORNEY FICARO: Now what happens then? . . . The Police officers found the offender Floyd pass Mr. Irving and pass Mr. Brock and they say "that is the man that just robbed us, that is one of them", and what does Mr. Floyd say? Absolutely nothing.

DEFENSE COUNSEL MOORE: Objection, your Honor, same objection as before.

THE COURT: Overruled.

Tr. 521–23. Therefore, as a result of the errors committed by the prosecutor and the trial judge, the jury was clearly left with the constitutionally impermissible impression that it could, and indeed should, draw inferences unfavorable to petitioners because of their post-arrest silence. *See Unit-*ed States v. Matos, 444 F.2d 1071 (7th Cir. 1971).

■■ Notwithstanding that petitioners' trial did abridge their Fourteenth Amendment rights, their convictions will not be reversed if the trial errors were harmless. In order for a constitutional error to be found harmless, the Court must conclude beyond a reasonable doubt that the error complained of did not contribute to the conviction. *Chapman v. California*, 386 U.S. at 24, 87 S.Ct. 824; *United States v. Buege*, 578 F.2d 187 (7th Cir. 1978) (harmless error rule applicable to references to an accused's post-arrest silence). Stated another way, the question for this Court is whether there is a possibility that the error complained of might have contributed to the conviction. *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). When applying the harmless error rule it is immaterial that there is sufficient evidence to convict. *Id.* The Court now turns to an examination of the evidence presented at petitioners' trial.

The State's evidence consisted primarily of the testimony of the three alleged robbery victims and the two arresting police officers. The three alleged victims all testified to the same version of events on the night of the robbery. Talley and Irving both made identifications of petitioner Anderson, and Brock identified both petitioners. The alleged victims testified that among the things taken by petitioners were two rolls of quarters, other money belonging to Irving and Brock, Irving's house keys, and other various items of Irving's personal property. Further, Irving testified that he saw petitioner Anderson place some of the money taken from Irving and Brock in Anderson's socks.

During cross-examination, Irving explicitly contradicted himself as to whether he had spoken to Doris Robinson, one of the defense witnesses, on the night before the trial. Further, defense counsel pointed out a discrepancy between Irving's testimony before the grand jury and at trial concerning how much money was allegedly taken from him by petitioners. Cross-examination of Brock revealed that he had seen petitioner Anderson prior to the night of

the alleged robbery. Defense counsel also elicited from Brock the fact that he had recently been convicted for possession of a controlled substance.

Two Chicago police officers, Patrolman Purtell and Hofer, identified both petitioners at trial and testified that upon their arrival at Irving's apartment on the evening of the robbery they observed petitioners running from Irving's building. The patrolmen further testified that when ordered to halt petitioners each dropped a revolver and then again broke into a run. Patrolmen Purtell testified that a search of petitioner Anderson discovered two rolls of quarters, Irving's apartment keys, and money hidden in his socks. Patrolman Hofer testified that at the time of petitioners' arrest he discovered Irving's allegedly stolen personal property in a car parked in the rear of Irving's apartment building. However, no evidence was introduced at trial establishing ownership of the car.

Petitioners called three witnesses; Anderson, Doris Robinson, and Darlene Hudson, petitioner Floyd's fiancee. Petitioner Anderson's version of the events on the night of the alleged robbery was that he and petitioner Floyd had gone to Irving's apartment in order to seek a "refund" on some heroin that Anderson had allegedly purchased from Irving and Brock several days earlier. Anderson testified that while petitioners, Irving, and Brock were inside Irving's apartment someone said "it's a raid" and that petitioners then attempted to flee Irving's apartment building. Anderson denied having possession of the two rolls of quarters and Irving's house keys.

Robinson and Hudson both testified that they had given both Irving and Brock money on several occasions between the time of the robbery and trial. Hudson and Robinson testified that Irving told them that the purpose for the payments was to allow Irving to recover the costs of moving from his apartment and the costs of lost narcotics, which costs allegedly resulted from the trouble at his apartment on the night of the robbery. Hudson further testified that Irving characterized the whole case as a misunderstanding from the beginning. Robinson and Hudson delivered certain testimony to the effect that both Irving and Brock were receiving official pressure to give incriminating testimony against petitioners. This latter testimony was in part contradicted by a state rebuttal witness.

On the basis of such evidence, the Court is unable to conclude that there is no reasonable possibility that the errors committed by the prosecutor and the trial judge contributed to petitioners' conviction in view of the egregious nature of those errors. The credibility of Irving was somewhat undermined by his conflicting answers during cross-examination as to whether he had spoken to Robinson the night before the trial and by his different accounts before the grant jury and at trial as to how much of his money allegedly was stolen by petitioners. Similarly, Brock's conviction for possession of a controlled substance suggests that he was not a witness above reproach. With respect to the testimony of the police officers, petitioners' flight is not inconsistent with Anderson's alibi. The testimony of Robinson and Hudson buttresses Anderson's exculpatory testimony in that it suggests that what did transpire on the night of the alleged robbery was indeed a dispute over a narcotics transaction.

▓ Thus, although there is certainly sufficient evidence in the record to support petitioners' conviction, it cannot be said that Anderson's exculpatory testimony was patently frivolous. However, the combined effect of the prosecutor's references to petitioners' post-arrest silence and the judge's failure to properly rule on the law and give an appropriate admonition to the jury may have persuaded the jurors to believe that if petitioners' alibi were true, they would have told it to the police when confronted with the accusations that they had committed an armed robbery. Accordingly, petitioners are entitled to a new trial free of any references to their post-arrest silence.

▓ The Court, in so ruling, is not unmindful of the lengthy criminal records of both petitioners. R. 37(a)–39(f). However, the due process clause of the Fourteenth Amendment demands that each defendant in a criminal case receive a fair trial. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6

L.Ed.2d 751 (1960). This is true, "regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies." *Id.* at 722, 81 S.Ct. at 1642.

· The Court is indeed perplexed by the trial conduct of both the prosecutor and the judge in this case. The law concerning comments upon an accused's post-arrest silence was well-settled at the time of petitioners' trial. *E. g., United States v. Matos,* 444 F.2d 1071 (7th Cir. 1971). This Court concurs with the recent comment of the Fifth Circuit that "the comment upon silence of the accused is a crooked knife and one likely to turn in the prosecutor's hand. The circumstances under which it will not occasion a reversal are few and discrete. We suggest that it be abandoned as a prosecutorial technique." *United States v. Edwards,* 576 F.2d 1152, 1155 (5th Cir. 1978). Therefore, for the reasons set forth above, respondent's motion for summary judgment is hereby denied.