THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BILLY LIGHTNING, Defendant-Appellant.

First District (1st Division)    No. 79-1140

Opinion filed December 29, 1980.

Ralph Ruebner and Rafael Schwimmer, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Mark X. Van Cura, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant was convicted of two counts of murder and two counts of armed robbery of Benjamin Cantrell and Francis Cantrell (Ill. Rev. Stat. 1975, ch. 38, pars. 9—1(a) (3) and 18—2). He was sentenced to two terms of 40 to 80 years for murder and two terms of 20 to 80 years for armed robbery, the sentences to run concurrently. On appeal the issues presented for review are: (1) whether the State proved defendant guilty of armed robbery beyond a reasonable doubt; (2) whether the trial court's sentence was excessive; and (3)

whether the trial court improperly entered judgment and sentence on two counts of armed robbery. No issue has been raised as to the sufficiency of the evidence as to the murder convictions.

We affirm.

The defendant and his uncle, Curtis Zackery, were jointly charged by information with the offenses of and armed robbery of Benjamin Cantrell and Francis Cantrell, who were found dead on February 22, 1977, in their home located in the Prairie Shores apartment complex in Chicago. In separate proceedings, Curtis Zackery pled guilty to these charges and was sentenced to concurrent terms of 50 to 100 years for murder and 20 to 60 years for armed robbery.

The first witness for the State was Homer Phillips, a teacher at the school in which the defendant was once enrolled. Phillips testified that on February 20, 1977, at approximately 4:15 p.m. defendant and Curtis Zackery came to his apartment in the Prairie Shores apartment to visit him. They stayed for about 20 minutes, and Phillips was unable to recall what the defendant was wearing but recalled that Zackery wore a dark coat. Zackery was described as being 5 feet 9 inches tall, of medium build, and 20 to 21 years of age.

Elaine Yarling, a resident of the building in which the victims both resided and were killed, testified that on February 20, 1977, between the hours of 4:30 and 5 p.m., she noticed Francis Cantrell on the elevator in the building with two young black men. She was wearing a long purple dress.

Irene Booth testified that she was a fifth floor resident of the building in which the Cantrells resided. On February 20, 1977, she had a party in her apartment between the hours of 3 and 6 p.m. She recalled that Mr. Cantrell arrived at the party alone at about 3 p.m. He said his wife was getting dressed and would be up later. Mr. Cantrell stayed at the party until approximately 4:45 p.m. Mrs. Cantrell never appeared at the party.

James Adams, the building engineer, testified that Mr. Cantrell was scheduled to work at 5 p.m. on February 20, 1977, and that he went on duty in place of Cantrell after failing to contact Cantrell by telephone.

Robert Wolock, property manager for Prairie Shores Apartments, explained the working schedules of both Mr. Cantrell and Mrs. Cantrell, employed as building engineer and building clerk respectively, for the apartment complex. Wolock recalled that on Tuesday, after speaking to Adams, he went to Cantrell's apartment to see why they had not reported to work. On the way he noticed that Mr. Cantrell's car, a 1970 Buick LeSabre, which was usually parked in the rear of the building, was not there. Wolock obtained a key and opened the door to the Cantrell's apartment and observed the apartment had been ransacked and saw Mrs. Cantrell lying naked on the blood-stained bed. The apartment was in total

disarray, with drawers thrown about, furniture knocked over, and clothing strewn about. The police were called, and Wolock returned to the apartment with the police and observed Mr. Cantrell lying on the floor, his head covered with dried blood.

Officer Daniel Kuciver of the Chicago Police Department saw both bodies and recalled seeing one of Mr. Cantrell's pants pockets pulled out and a frying pan lying near him. There was also a woman's purse and several articles lying on the bed. Officer Kuciver, and his partner, searched the nearby parking lot for Cantrell's automobile, a 1970 Buick.

Officer Roman Kugelman testified that on February 20, 1977, the day of the murders, he issued a speeding citation to Curtis Zackery in the 1000 block of North Ogden Avenue. The ticket was issued at approximately 6:20 p.m. The automobile that was stopped was a 1970 Buick bearing license plates that belonged to the Cantrells.

Evidence technician James Biggers testified as to what he found in the Cantrells' apartment. He discovered on February 22, 1977, among other things, six checks, with the Cantrells' name on them, a woman's purse with its contents emptied on the bed, a set of keys, a plastic bankbook cover, an open folding knife that was covered with blood, and a black panther figurine on the floor. In his search of the apartment Officer Biggers found no United States currency. As to the fingerprints recovered from the articles at the scene, it was stipulated that Curtis Zackery's prints were discovered on one of the checks and on a plastic bankbook cover.

Testimony of Audria Simpson, a vocational teacher at the Juvenile Detention Center school, established that she received a call from defendant on February 23, 1977, and arranged a meeting with him in the lobby of the Audy Home. Defendant confided that he had witnessed the Cantrell murders and that he and his uncle were at the Prairie Shores apartment complex visiting a former teacher, Homer. After leaving Homer's apartment, defendant helped a woman carry her packages, and upon arriving at her apartment, his uncle went crazy. Defendant told her that his uncle slapped the lady and went into a rage. Hearing someone at the door, his uncle directed him to remove the latch and a man entered and defendant's uncle and Mr. Cantrell began to fight. The defendant then hit Mr. Cantrell with a frying pan, noting that his uncle murdered the Cantrells with a knife found in the apartment. After leaving the scene of the murders, defendant and his uncle stole Mr. Cantrell's car, went riding and spent the money.

Simpson advised defendant to contact the police, but defendant wanted to contact his uncle. Defendant and Simpson again met at the Audy Home the following day, February 24, to confer with Chief Smith,

the chief of the sheriff's police at the Audy Home. Testimony of William Smith established that defendant told Smith that he was present at the scene of the Cantrell murders, that he had no participation in the murders and that he probably left fingerprints behind. Defendant told Smith that they had gone to the Cantrell apartment for the primary purpose of a "rip-off" and that the situation got out of hand. Defendant admitted that he had hit someone and that the other person had found a knife and cut one of the Cantrells. Smith then advised the defendant to stop talking until an attorney arrived, which was a half hour later.

The testimony of Stephanie Skoronski, the mother of Frances Cantrell, established that her daughter and son-in-law left a party in Chicago Heights on February 19, 1977. The next time she saw them they were dead. Her daughter had been married for 32 years.

Officer Kehoe and his partner, Officer Delowery, were responsible for the arrest of defendant. The investigating officers supplied them with defendant's name, description and address. Upon arriving at the address, a young woman answered the door and admitted them into the apartment. In the living room stood two men, neither of them acknowledged that he was Billy Lightning. Officer Kehoe then arrested the man who fit the description. The officers did not have a warrant for defendant's arrest.

On cross-examination Officer Kehoe testified that the investigating officers Janda and Rafferty directed him to arrest the defendant on the basis of information they had gathered through canvassing residents living in the area where the deceased's car had been located.

Dr. Lee Beamer, the pathologist who conducted the autopsies on the Cantrells testified as to extensive stab wounds and lacerations on the head and chest, with death caused by these wounds. He estimated that both parties were dead for 24 to 48 hours before their bodies were discovered.

After the introduction of various exhibits into evidence, the State rested its case in chief and it was stipulated that the defendant was 18 years old.

Prior to trial, defendant moved to quash defendant's arrest and suppress his statements. The motion was denied. At trial the prosecution did not introduce any statements the defendant made to the police at or after arrest. Instead, the State relied on defendant's statements made to Audria Simpson and William Smith.

At trial defendant called Joseph Goronski, the brother of Mrs. Cantrell, who testified that the Cantrells had been married some 32 years and had a good marriage. He never saw them hit each other.

Investigator Frank Laverty testified that on Wednesday, February 23, he interviewed the Cantrell's relatives and upon returning to his office, he learned that the police had found the victims' abandoned car. He

canvassed the neighborhood where the car was located and some residents of the area indicated that they should talk to Billy Lightning, the defendant, and his uncle about the car. Based upon that information the defendant was arrested. While conducting this part of his investigation, he was unaware of defendant's statement to Audria Simpson.

Debra Stark, a resident of the deceaseds' apartment complex, testified that she had spoken to Mrs. Cantrell about a disturbance caused by the paper boy coming to the apartment door at all hours of the night. She recalled that the paper boy incident occurred at about 7 p.m. on February 4, more than two weeks prior to the alleged offense. Mrs. Cantrell advised Ms. Stark that there were other residents who had similar complaints, and she and Mr. Cantrell were awakened one morning at 4 a.m. by the paper boy, who desired to use their bathroom.

Irene Booth, another resident of the deceaseds' apartment complex stated that a week prior to the offense in question Mr. Cantrell purchased a fishing knife. Mr. Cantrell did not describe nor show the knife to Mrs. Booth.

Charles Gray, another resident in the building, testified that Mr. and Mrs. Cantrell had a very good relationship. Although he had never seen them fight with one another, he heard rumors that they quarreled.

Patrick Kennedy testified that on February 23, 1977, while visiting another apartment near the deceaseds' apartment, he spoke to investigating police officers. Although he was not sure when he last saw Mrs. Cantrell alive, he believes it was either February 19 or February 21, 1977.

Whereupon the defense rested and the jury returned a verdict finding the defendant guilty of two counts of murder and two counts of armed robbery. After electing to be sentenced under the old code, the defendant was sentenced to 40 to 80 years for each murder count and 20 to 80 years for each count of armed robbery, all sentences to run concurrently. The defendant appeals from the convictions of armed robbery and the sentences imposed.

Defendant contends that the State failed to prove defendant guilty of armed robbery beyond a reasonable doubt, where it failed to show that money was taken from the deceaseds' apartment. Defendant claims that he was charged with two counts of armed robbery in that he took an amount of United States currency from the Cantrells. Defendant further contends that:

> "The prosecution's evidence showed that defendant told his former school teacher, Ms. Simpson, that after the Cantrell's murder he and his uncle drove north, where they 'spent some of the money.' However, Ms. Simpson explained that she had no idea where the defendant got this money. The State theorized that

because no currency was found in the apartment the offenders must have taken whatever money the Cantrells had on hand. The evidence the State relied upon was circumstantial."

Additionally, defendant claims that the acts constituted only one offense, hence only one conviction should have resulted.

The People maintain that the defendant and his uncle were charged with two counts of armed robbery and that counts 1 and 2 charged that they, by the use of force and while armed with a dangerous weapon, took an amount of currency from each of the victims, Benjamin and Francis Cantrell, respectively. The facts and circumstances in evidence demonstrate that the armed robbery of the victims constituted two separate acts, and therefore, two separate and distinct offenses. Furthermore, the evidence demonstrated beyond a reasonable doubt that property was taken from each of the victims.

Consider first that on February 20, 1977, at approximately 4:30 p.m., Francis Cantrell was seen on the elevator in the building where she resided with two young black men. Defendant admitted to Audria Simpson that he and his uncle, Curtis Zackery, helped a lady carry her packages to her apartment and that, upon arriving there, Curtis went into a rage and began slapping the lady. In the meantime the defendant looked over the apartment in search of something to steal. Defendant admitted to William Smith that he and Curtis had gone to the Cantrell apartment for the primary purpose of a "rip-off" and that the situation got out of hand.

At the time of the above altercation with Mrs. Cantrell, it appeared that Mr. Cantrell was attending a party in the building. Benjamin Cantrell arrived at a party in the building at approximately 3 p.m. that day and stated that his wife was getting dressed and would arrive later. Benjamin stayed at the party until 4:45 p.m., although his wife never appeared. While the defendant searched the apartment for something to steal and Curtis struggled with Mrs. Cantrell, the defendant heard someone at the door and Curtis directed him to remove the latch. Mr. Cantrell entered and a fight ensued.

Consider next, on the bed, alongside the naked body of Mrs. Cantrell, was a woman's purse with its contents emptied out. Also on the bed were the bloodied knife, numerous checks, and jewelry.

The fully clothed body of Mr. Cantrell was found on the floor with his left front and left rear pockets turned inside out. No currency was recovered from the victims from anywhere in the apartment. The defendant admitted to Audria Simpson that after he and Curtis left the scene they stole the Cantrell automobile, went riding, and spent some money.

■■ We agree with the position of the State that the above facts demonstrated that the armed robbery of the victims were not contemporaneous in time and were committed against two separate victims, and as such, constituted separate and distinct offenses. (See *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731; *People v. Robinson* (1976), 41 Ill. App. 3d 526, 354 N.E.2d 117.) The emptied purse next to the body of Francis, the pockets turned inside out on the clothing of Benjamin, the fact that no currency was found on the bodies or in the apartment, and the defendant's statement that they spent some of the money, all demonstrate that there were two distinct offenses and that currency was taken during the robberies.

The defendant relies on two cases for his contention that the armed robberies of Benjamin and Francis Cantrell constituted only one crime. In *People v. Scott* (1974), 23 Ill. App. 3d 956, 320 N.E.2d 360, *cert. denied* (1975), 423 U.S. 844, 46 L. Ed. 2d 65, 96 S. Ct. 81, the defendant was convicted of two counts of armed robbery where money was taken only from a cash register in the presence of the bartender and the owner. In *People v. Chaka* (1977), 55 Ill. App. 3d 470, 371 N.E.2d 74, the defendant was convicted of two counts of armed robbery where money was taken only from a cash register in the presence of a salesperson and the store manager. In both cases the court held that there was only a single act of robbery even though two victims were present, both had custody of the property, and both were threatened. The above two cases may be distinguished on the basis that the facts clearly establish that the armed robbery of Francis and Benjamin Cantrell were two separate acts, two separate and distinct offenses.

■■ Defendant also relies on *People v. Daniels* (1979), 75 Ill. App. 3d 35, 393 N.E.2d 667, for the contention that the prosecution failed to prove defendant guilty beyond a reasonable doubt. In that case the defendants were charged with the armed robbery of currency from the victim. At trial the only evidence adduced regarding the property taken concerned the alleged taking of a watch from the victim and no taking of currency was proved or even mentioned at trial. There the court held that the prosecution utterly failed to conform to the charge in the indictment and therefore failed to meet its burden. In the instant case, not only was the taking of currency mentioned at trial, but evidence at the scene as well as statements from the defendant proved that money was taken. The evidence presented at trial clearly supported the jury's verdict and defendant was properly found guilty beyond a reasonable doubt of the armed robberies of both Benjamin and Francis Cantrell, each a separate and distinct crime.

Finally, defendant contends that the trial court's sentence of 40 to 80 years for murder was excessive, particularly in light of the fact that the defendant was only 17 years old at the time of the offense. The trial court sentenced the defendant, 18 years old at the time, to two concurrent terms of 40 to 80 years for murder and two terms of 20 to 80 years for armed robbery, the sentences to run concurrently. The court made it clear for the record that its sentence meant solely to punish the defendant. "Believe me," the trial judge announced after sentencing the defendant, "when I sentence you, I am not sentencing you for rehabilitation, Mr. Lightning, I am sentencing you because you took two lives without just cause or provocation. If I stood in your place and had done this act, I would expect the same." Defendant argues that the trial judge failed to fashion a sentence which allowed for the possibility of defendant's rehabilitation and defendant requests that his sentence of 40 to 80 years for murder be reduced to 20 to 40 years and that his armed robbery sentence be reduced to 15 to 45 years.

■■ In response to this request, we agree with the statement of the court in *People v. Jenkins* (1980), 88 Ill. App. 3d 719, 410 N.E.2d 1145, where the court stated:

> "With respect to defendant's request for a reduction in his sentence, we note that sentencing is a matter of the trial court's discretion and may not be altered absent an abuse of that discretion. [Citation.] Despite defendant's youth and the considerable length of the sentence, we cannot say there is any showing of substantial reasons for reducing the sentence [citation], or that it is manifestly excessive." 88 Ill. App. 3d 719, 727.

For the above and foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.